GEORGE WEBBER, plaintiff in error, *vs.* WILLIAM HANKE,
defendant in error.

An action was brought for extra work upon a building which had been enlarged
beyond its original plan, the extra work being upon the enlarged part, and on
the trial, a witness who testified touching the worth of the extra work, stated
at the close of his examination, that he had seen the plan and specification
of the building as originally designed; whereupon it was moved to strike out
all his testimony, unless said plans and specifications were produced. *Held,*
that the plans and specifications being immaterial in the action for extra work,
the Court properly denied the motion.

A witness being asked whether he knew the general reputation of a prior witness
for truth and veracity, in the neighborhood where he resided, answered that
he did not. The further question, whether the witness "had heard people
acquainted with him, speak of such character," held not admissible.

The same witness testified that he knew the previous witness, in "the old
country," and that such witness "had resided in this country about five years."
He was then asked if he knew his character for truth and veracity in the old
country? The question was held improper.

George Webber, plaintiff in error, vs. William Hanke, defendant in error.

Error to Wayne Circuit.

This was an action of assumpsit, brought by Hanke, the defendant in error, against Webber, before a Justice of the Peace. The declaration was generally for work and labor, materials furnished, &c. The plea was general issue only. Judgment was rendered by the Justice for Hanke. Webber sued out a writ of certiorari to the Wayne Circuit Court, where the judgment of the Justice was affirmed. The cause came before this Court by writ of error, sued out by Webber. The facts are fully stated in the opinion of the Court.

*Howard, Bishop & Holbrook,* for the plaintiff in error.

*H. G. Spafford,* for the defendant in error.

By the Court, PRATT, P. J.

This Court, in Higley *vs.* Lant and Chamberlin (*see* 2 *Mich. R., p.* 612), held, that a cause where there were no errors in law affecting the merits of the controversy between the parties, could not be legally reviewed and judicially readjusted on conflicting proofs, either by the Circuit Court or certiorari, or by this Court on error. In view of this decision, and to which the Court still adheres, the case under consideration will be examined.

By an inspection of the return of the Justice to the writ of certiorari, it conclusively appears that Webber, the plaintiff in error, contracted with one Apel to build for him a brick building, forty by fifty feet on the ground. That subsequently Apel let, by contract, the carpenter and joiner work to Hanke, the defendant in error. That after the work had been commenced by Apel and Hanke, under their respective contracts, and the foundation for the building was ready for the timbers, Webber discovered his lot on which the building was being erected to be ten feet wider than the building he had contracted for, and accordingly enlarged the plan of his

building to meet the width of his lot. That Hanke refused to go on and do the extra carpenter and joiner work, rendered necessary by the enlargement of the building, and look to Apel for his pay. That thereupon Webber agreed with Hanke to pay him for the extra work, if he would go on and do it; and that pursuant to such agreement of Webber, he did go on and do all the extra carpenter and joiner work that became necessary by reason of the enlargement; and that this suit was brought by Hanke to recover of Webber pay for this extra work. The agreement of Webber to pay Hanke for the extra work, the performance of the work by Hanke, pursuant to the agreement, and the value thereof, were all matters of fact, to be determined by the Justice upon the evidence, and his determination thereon is conclusive, unless in the proceedings he committed some errors in law; such as must necessarily affect the rights of the plaintiff in error, against whom judgment was rendered.

Several errors in the proceedings before the Justice are assigned, and upon which the plaintiff in error seeks to reverse the judgment below. The first error assigned, is the refusal of the Justice to strike out of the case the testimony of the witness, Barrows, unless the plan and specification of the building, as originally designed, were produced. The second is, the subsequent reception of them by the Justice when produced. It appears, by the return of the Justice, that Barrows was introduced and gave evidence, on the part of the defendant in error, touching the worth of the extra work, and that he stated, at the close of his examination in chief, that he had seen the plans and specifications of the building as originally designed. Whereupon the Court was moved, on the part of the plaintiff in error, to strike out of the case his testimony unless they were produced, which the Justice refused; that subsequently, but before the case was closed, defendant in error produced them, and they were received by the Justice under objection, on the part of plaintiff in

error. But it does not appear that the witness, Barrows, made the statement of having seen them in answer to any question put to him, or whether it was a mere casual remark of his own. Nor does it appear that he ever had possession of them, or in whose possession they were when he saw them, or that he had any knowledge as to where they then were. There was no legal foundation, therefore, for the motion. The Justice, however, correctly decided it, on the ground that the action was brought for the extra work, and not for work done on the building according to the original plan, and that they were in this case, therefore, immaterial. If, however, this decision of the Justice could, upon any ground, be considered erroneous, the error was subsequently cured by the introduction of them before the case was closed. But, in a legal point of view, they were entirely immaterial; being merely the draft of the building, as originally designed before the enlargement; they did not necessarily have the least connection with the extra work, and could not legally have had the least possible bearing on the case.

The third allegation of error is, that certain receipts from Hanke to Apel, offered in evidence by Webber, were ruled out by the Justice. In this, the Justice was clearly correct. What honest use could Webber have made of these receipts from Hanke to Apel? It was not pretended by Webber that the receipts were given for pay which Hanke had received on the extra work, or that they were in any manner legally connected with it, or that Apel ever paid or agreed to pay Hanke, or any other person, one dollar on that work. Not only so, Webber called Hanke to the stand as a witness in the cause for himself, and as such witness, he testified positively, that after the foundation was up and ready for the first tier of joists, he refused, in the presence of both Webber and Apel, to do the extra work rendered necessary by the enlargement, and look to Apel for the pay, and accordingly

26

George Webber, plaintiff in error, *vs.* William Hanke, defendant in error.

directed his men to return home. That, thereupon, Webber agreed that if he would go on and do the extra work, he would pay him what it was worth ; that he never made any agreement with Apel to do this work, and that neither Apel nor Webber had ever paid him anything for it. He further testified, that since the work was done, he had called on Webber several times for the pay, and had always been put off by Webber, on the ground of having no money, and that it was for the extra work done he brought this suit. Such is the testimony introduced into the case by Webber himself, no part of which is controverted by any other evidence ; and although it is the testimony of the plaintiff in the suit, still, Webber having voluntarily introduced it, he is legally bound by it, the same as he would have been if derived from any other person introduced and sworn as a witness in the cause for himself.

The fourth assignment of error is, that the Justice did not allow a certain question to be put to Schimmel, introduced on the part of the plaintiff in error to impeach Strasburg, a witness on the part of the defendant in error. It appears by the case, that Schimmel, on being called and sworn, was asked whether he knew the general reputation of Strasburg for truth and veracity in the neighborhood where he resided ; to which Schimmel answered, that he did not. This was followed up by the question, " Have you heard people acquainted with him speak of such character?" which was objected to, and the objection sustained by the Court. The ruling of the Court on this question was correct, beyond all doubt. The first question was plain, and the answer of the witness distinct and categorical. It is not to be assumed in such a case, that the witness did not understand the question thus distinctly answered. The legal presumption is, that he did not understand it ; and if the witness did not in fact know, as he testified that he did not, what the general

reputation of Strasburg for truth and veracity was, in the neighborhood where he resided, that was legally the end of the examination of the witness on this subject. If the witness, instead of giving a direct answer to the question, had said that he did not understand it, or had given such an answer as would clearly indicate that he did not understand the purport of it, then such further questions as deemed proper by the Court might have been propounded to him, as necessary to an understanding of the original interrogatory. But suppose he had heard others speak of his character. That was not the question ; for those *others* might be very few in number. The witness must be able to state what is *generally* said of the person sought to be impeached, by those among whom he dwells, or with whom he is chiefly conversant. The regular and legal mode of inquiry, is first, whether the witness knows the general reputation of the person sought to be impeached for truth and veracity, among his neighbors ; and secondly, what that reputation is.

In the English, and some of the American Courts, the further question, whether the witness, upon his knowledge of the reputation of the person sought to be impeached, would believe him on oath, has been allowed. But latterly, says Professor Greenleaf, the propriety of this practice has been much questioned, and he gives it as his opinion, that the weight of authority is clearly against it ; at any rate, reason and justice is against it. The view of Justice Shepley on this subject, in Phillips *vs.* Kingfield (1 *App. R.* 375), is the correct view, and should be adopted ; he says : " The witness should not be allowed to substitute his opinion for that of the jury ; nor should the jury rely upon any such opinion of the witness, instead of exercising their own judgment, after taking into consideration all the testimony submitted on the question. Whether the witness sought to be impeached is to be finally believed or not, is a question to be determined

by the jury on the whole evidence, and not for some hostile or prejudiced witness to settle it for them, by the expression of his own opinion on the subject. The general reputation for truth and veracity, as it is legally understood of every witness, is open to examination, but justice to the witness requires that such examination should be governed and conducted by correct legal rules of evidence.

Again, the witness Schimmel stated that he knew Strasburg in the old country, and that he had resided in this country about five years. This statement was followed up by the question, " Did you know his character for truth and veracity in the old country?" which was objected to, and the objection sustained by the Court. This question was clearly objectionable ; it was not as to whether he knew his general character, but his character merely. The question, therefore, did not come within the legal rule. But, independent of this ground of objection, the interrogatory was objectionable. The correct general question to be propounded on this subject is, " Do you know what the general reputation of (*the. witness sought to be impeached*) is for truth and veracity in the neighborhood where he resides?" and not where he might have resided in some other country, five years before. A residence of five years in this country is sufficient length of time, generally, to develop the general character of a person, and particularly for truth and veracity ; and if, in such a case, there is any reason presented for relaxing the general rule, it must be left to the Court to decide judicially upon the sufficiency of such reasons. It is a matter about which a Court must necessarily exercise its judicial discretion, in view of all the facts and circumstances.

As no errors, affecting the rights of the plaintiff in error, can be discovered in the ·case, and as the merits of the case appear to be decidedly in favor of the defendant in error, the judgment below must be affirmed with costs.

Present and concurring, WING, JOHNSON, MARTIN, GREEN, COPELAND and BACON, J. J.

DOUGLASS, J., did not participate, having decided the cause in the Court below.