# DAVID S. BLACKBURN

*v.*

# MARY JANE MANN.

1. PROMISE OF MARRIAGE—*contract construed as to time of performance.* Where there is a general promise to marry, the law will imply that it is to be performed within a reasonable time. It is not necessary to a right of action for a breach of the promise, that any definite time be fixed for the marriage, and if it is said it might be in one year or in ten years, this will not qualify the contract itself, as it does not fix any definite time.

2. SAME—*promise may be inferred from conduct.* A general engagement to marry may be inferred from the conduct and social relations of the parties, extending through a period of many years, independent of any express agreement to marry.

3. LIMITATION—*as to promise to marry.* Where the parties, through a period of many years, treat their contract to marry as a continuing one, by recognizing its existence and promises of its fulfillment, the Statute of Limitations will not begin to run until one party has broken the engagement, or until notice is given of a termination of the agreement.

4. STATUTE OF FRAUDS—*as applicable to promise to marry.* An agreement to marry, until a breach is shown that terminates it, may be regarded as a continuing contract by consent of the parties, and hence, in no just sense, within the Statute of Frauds.

5. DAMAGES—*matters in aggravation, in suit for breach of promise to marry.* If the defendant, in an action for a breach of promise to marry, attempts, in bad faith, to blacken and defame the plaintiff's character, it may be considered in aggravation of damages.

6. WITNESS—*impeachment.* If a witness has resided long enough in a neighborhood to make a reputation for truth and veracity, that is known by his neighbors, it may be shown by way of impeachment, although he does not, at the time, reside in such neighborhood, but elsewhere.

7. PRACTICE—*as to order of admission of evidence.* The order of the admission of evidence is a matter within the discretion of the court, and therefore the admission of evidence in rebuttal, which should have been given in chief, can not be assigned as error.

APPEAL from the Circuit Court of Vermilion county; the Hon. OLIVER L. DAVIS, Judge, presiding.

This action was brought by Sarah Jane Mann against David S. Blackburn, to recover damages for a breach of a marriage contract, alleged to have existed between the parties. The declaration is in assumpsit, and contains three counts. In the first count it is averred, in consideration plaintiff had, on request of defendant, promised to marry him when thereunto requested, he promised to marry her when he should be requested. Both in the second and third counts the promise is laid as a mutual promise to marry each other "within a reasonable time" after making the contract. The third count avers seduction, by way of aggravation of damages. Breaches assigned in all the counts are, defendant refused to marry plaintiff, and in disregard of his promise married another woman.

Only the general issue was pleaded, but a stipulation was signed by counsel as follows: "It is also agreed, that, under the above plea, any evidence may be introduced which would be competent under any pleading well pleaded in this cause."

An unusual amount of evidence was heard on the trial, much of it conflicting in the extreme, and the jury, under instructions from the court, found the issues for plaintiff, and assessed her damages at $15,000. Motions for a new trial and in arrest of judgment, were severally overruled, and judgment pronounced on the verdict. Defendant brings the case to this court on appeal.

Mr. J. W. GORDON, and Messrs. ALLEN, MACK & DAVIS, for the appellant.

Messrs. BISHOP & MANN, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

That a promise by defendant to marry plaintiff was proven by the testimony of plaintiff and other witnesses, must be conceded. It was met by a broad and unequivocal denial by defendant, except as to a promise dependent on a contingency that never happened. On the mere weight of the evidence, if it shall be found applicable to the issues made by the pleadings, counsel make no question against the verdict.

The assumption, there is a variance between the contract as stated in the several counts of the declaration, and the proof adduced on the trial in support of it, arises from a misconception of the evidence. Regarding, as we must do, the finding of the jury as establishing the truth of plaintiff's testimony, our understanding is, it is sufficient to sustain either count of the declaration. It was a general promise to marry, and the law implies it should be performed within a reasonable time. As to the time when the marriage should be solemnized, it was said, "it might be one year or it might be ten," but that did not qualify the contract itself. That, as we have seen, was general, although the day upon which it should be celebrated was left as a matter for future mutual arrangement. It is a subject about which parties engaged to be married might be expected to converse frequently, and perhaps to change plans agreed upon to suit each other's convenience. It is doubtful whether the parties, in discussing the time when they would celebrate their marriage, understood the indefinite expressions "it might be one year or it might be ten," in the sense of fixing any definite time. It was simply an expression of an opinion on a question they had not then fully considered, but would be a subject of future agreement. That is all these phrases mean in this connection, and the sequel shows that is the sense in which the parties themselves understood them.

But, aside from the question of any express promise, the relations of the parties were such as warranted the inference a general engagement to marry existed between them. Their social relations continued through a period of many years,

during all which time defendant was constantly giving plaintiff assurances of his affectionate regard. His attentions to her during that protracted period, so far as she could know or believe, were exclusive, and of that cordial character not to be expected from one not intending to make her his wife. Appealing to everything sacred that could give sanctity to assurrance, he solemnly avowed "he would never disown" her. She had given birth to a child, of which he was the father. Both before and after the birth of the child, he made her the most positive pledges that could be given, he would make her his wife so soon as some obstacles, which he alleged then existed, should be removed. When she pleaded with him to remove the stain from her character, and the great sorrow that pressed so heavily upon her, he again and again asseverated his constancy and honorable intentions towards her. These repeated declarations may, with great propriety, be regarded as renewals of his earlier express promise to marry plaintiff. Although denied by defendant, we must understand the verdict of the jury as finding these controlling facts in favor of plaintiff.

Through the many years of intimacy between plaintiff and defendant, they seem to have themselves treated the contract of marriage as a continuing one, by recognitions of its existence and promises of fulfillment. Assuming these facts to be true, as we must do under the finding, neither the Statute of Limitations nor the Statute of Frauds, insisted upon in defense, can have any application. A contract of marriage may be inferred from defendant's conduct, up to the time of his formal announcement to her he intended to marry another woman. That fact was, itself, a recognition of a previously existing contract, and which he seems to have understood it required some express notice to terminate. Applying the Statute of Limitations to this as we would to any other contract, no period of limitation prescribed by the statute had elapsed before suit was brought.

Nor can it be maintained, by any fair rendering of the testimony, the contract proven was not to be performed within a

15—85TH ILL.

year, so as to bring it within the operation of the Statute of Frauds. Contracts of marriage, although defined as " civil contracts," are peculiar, and it is, perhaps, not entirely accurate to say they are subject to the same strict construction as civil contracts in relation to property. As a general rule, it may be no accurate terms are used in making them, nor is it material any precise day be fixed, at the making of such contract, when it shall be fulfilled. Such matters are usually for future consideration, and really form no material part of the contract. The law implies, such contracts, in the absence of any special agreement, shall be performed within a reasonable time. It is a relation that affects the happiness of the parties for life, and it may be years may elapse, after the engagement is understood, before any day is definitely agreed upon for consummation. Such contracts, until a breach is shown that terminates them, may be regarded as continuing contracts by consent of the parties, and hence are, in no just sense, within the Statute of Frauds.

The criticism made upon the instruction given for plaintiff, that if defendant had attempted to blacken and defame the character of plaintiff, and failed, and such attempt was made in bad faith, it might be considered in aggravation of damages, is not warranted by anything it contains. The distinction sought to be taken is exceedingly subtle, but the impression it would commonly make is, the *attempt* to " blacken and defame the character of plaintiff," that was made in *this case*, and, indeed, the words used limit its meaning to that application. The principle asserted is warranted by the decision of this court in *Fidley* v. *McKinley*, 21 Ill. 308, and there was no error in giving the instruction.

The other instruction, that if plaintiff and defendant made a mutual contract to marry, and by the terms of such contract no time was agreed upon when the marriage should take place, then the law is, it is a contract to marry within a reasonable time, is challenged, not so much because it does not state a correct legal principle, but because it is not applicable to the facts of the case. It is conceded it would be law as to all gen-

eral promises to marry. Such a promise is alleged in the declaration, and as we understand the testimony, such a promise is proven. The vice of the whole argument for the defense, as we have before intimated, lies in the assumption the promise of marriage proven is a conditional one. That is not the fact. It was an absolute promise, if the testimony of plaintiff is to be believed, and the jury have regarded it as true, subject to no conditions nor the happening of any contingency. What was said, that it might be one year or ten, or as to the death of plaintiff's parents, were mere casual expressions, made when considering the probable date they would fix for the consummation or celebration of their marriage. Giving this interpretation to these expressions, the case is relieved of all the difficulty suggested by the argument for the defense.

The court ruled most justly, and in accordance with authority, in the admission of impeaching testimony as to the witness Morgan. *Holmes* v. *Stateler*, 17 Ill. 453. In that case, as in this, the witness had resided in the county where the suit was commenced, long enough to make a reputation that was known by his neighbors, and if it was bad, the jury might well believe he is not now entitled to entire confidence. Any other rule would be most unreasonable. Since he had left the vicinage, witness had not resided in any locality long enough to establish any reputation that could be generally known. Besides, he had been back to his former residence frequently, so that his acquaintances could still know his reputation for truth and veracity. It would be a reproach to our laws, if the character of a wandering person, who is offered as a witness, could not be proven, if he had ever resided in any locality long enough to make a reputation.

Objection was taken to the admission of what are called the "Sallie Anderson letters," in rebuttal, after defendant had closed his defense. No material importance could be ascribed to them. All they tended to prove is, the want of candor on the part of defendant in his attentions to plaintiff, and that was abundantly proven by other testimony to which no objections were raised. In that view, the admission of the letters, whether

proper or improper, was not hurtful to the defense. As to the objection, such testimony was admitted in rebuttal, when, if proper at all, it should have been given in chief, it is a sufficient answer to say, that the order of the admission of evidence is within the discretion of the court.

The judgment will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE SCHOLFIELD took no part in the decision of this case.