## Philip S. Judy, Jr., v. Amanda S. Sterrett.

1. BREACH OF PROMISE OF MARRIAGE—*Immoral Consideration.*—A promise of marriage founded upon the consideration of illicit sexual intercourse is void.

2. CONTRACT OF MARRIAGE—*May be Implied.*—An express and formal promise is not necessary; a promise may be inferred from the language, conduct, and relations of the parties.

3. CONTRACT OF MARRIAGE—*Acceptance.*—An acceptance of a promise of marriage may be inferred from circumstances the same as a promise to marry.

4. SPECIAL FINDINGS—*Restricted to Ultimate Facts.*—Special findings should be restricted to ultimate facts, so held in an action for breach of promise to marry where the court was asked to submit the following interrogatories: Did the defendant promise to marry the plaintiff? which was submitted. Question No. 2 was: If you have answered "Yes" to question 1, then when and where did he make the promise? which was not submitted. *Held*, it was properly refused.

5. SPECIAL FINDINGS—*Province of the Jury.*—It is unreasonable and impracticable to require juries to reduce to writing the evidence upon which they base their conclusions upon ultimate facts; as, to state time when, and place where, litigants entered into agreements.

6. CONTRACT OF MARRIAGE—*No Time Fixed—To Marry upon Request.*—If a contract of marriage is made and no definite time fixed for its consummation, in law the contract is one to be performed in a reasonable time, and if a contract is made to marry upon request, the plaintiff may make such request by an agent, as well as by herself.

7. CONTRACT OF MARRIAGE—*What is Not an Abandonment.*—Where parties to a marriage contract sever their relations as betrothed lovers for a time, and at the request of either they are resumed, no formal new promise of marriage is necessary after such resumption.

8. CONTRACT OF MARRIAGE—*Immoral Consideration and Other Promises.*—The fact that a promise of marriage is made upon an immoral consideration is immaterial where there is evidence that other promises or obligations free from such illicit taint were made or existed, and a right of recovery can not be denied if such other promises are proven.

**Memorandum.**—Assumpsit for breach of marriage contract. Appeal from the Circuit Court of Hancock County; the Hon. CHARLES J. SCHO-FIELD, Judge, presiding. Heard in this court at the May term, 1893, and affirmed. Opinion filed October 28, 1893.

The opinion states the case.

APPELLANT'S BRIEF, AKERS & PETRI AND CARTER, GOVERT & PAPE, ATTORNEYS.

A promise to marry on the condition that a woman have sexual intercourse with a man, is contrary to public policy and void. 2 Am. and Eng. Ency., 522, 523; 9 Id. 921; 3 Id. 874; Saxon v. Wood (Ind.), 30 N. E. Rep. 797; Wallace v. Rappleye, 102 Ill. 229, 249; 1 Story's Eq. Jurispr. Sec. 296; Greenhood on Pub. Pol., rule 188, p. 201; Bishop on Contr., Sec. 508; Hanks v. Naglee, 54 Cal. 51; Steinfield v. Levy, 16 Abb. Pr. N. S. (N. Y.) 26; Goodall v. Thurman, 1 Head (Tenn.) 209; Baldy v. Stratton, 11 Pa. St. 316; Forsythe v. State, 6 Ohio 19; Beaumont v. Reeve, 8 Ad. and El. N. S., 483.

If any part of the entire consideration for a promise, or any part of an entire promise be illegal, whether by statute or at common law, the whole contract is void. 1 Parsons on Contr., 6 Ed. *456; Bishop on Contracts, Sec. 487; Saxon v. Wood (Ind.), 30 N. E. Rep. 797; Steinfeld v. Levy, 16 Abb. Pr. N. S. 26; James v. Jellison, 94 Ind. 292; Lodge v. Crary, 98 Ind. 238; Ricketts v. Harvey, 106 Ind. 564.

The defendant may show that he was discharged by the plaintiff's express consent, or by her consent to be implied from her conduct. 2 Am. and Eng. Ency. of Law, 525, 526; Bishop on Contracts, Secs. 812, 837; 2 Parsons on Contracts, *677, *678; Shellenbarger v. Blake, 67 Ind. 75; Grant v. Willey, 101 Mass. 356; King v. Gillett, 7 Mees. and W. 55, 58; Davis v. Bomford, 6 Hurl. and N. 245.

Mere courtship, or even an intention to marry, is not sufficient to constitute a contract of marriage. 1 Wait's Act. and Def., 722; Homan v. Earle, 53 N. Y. 267.

It by no means follows because a gentleman is the suitor of a lady, and visits her frequently, that a marriage engage-

ment exists between them. If this were so, it would be dangerous for an unmarried man to pay attention to an unmarried woman. Walmsley v. Robinson, 63 Ill. 41; Townsley v. Quinlan, 17 Ill. App. 610; Burnham v. Cornwell, 16 B. Mon. 284.

To make a valid contract of marriage there must be an acceptance of the offer of marriage, or a promise in return; both parties are bound, or neither is; the contract must be mutual. 2 Am. & Eng. Ency. of Law, 521, and cases cited; Espy v. Jones, 37 Ala. 379; Kelly v. Riley, 106 Mass. 339.

APPELLEE'S BRIEF, O'HARA, SCOFIELD & HARTZELL, ATTORNEYS.

The acceptance, like the offer of marriage, need not be in expressed words, but may be inferred from the promisee's conduct. Express words need not be proved on either side. It is sufficient if there is shown a definite understanding between the parties. Parties are presumed to intend what their conduct fairly indicates. An agreement to marry may be inferred by the jury from their conduct and treatment of each other, their letters and their habits. 2 Eng. & Am. Ency. 521; Richmond v. Roberts, 98 Ill. 472; Rockafellow v. Newcomb, 57 Ill. 186; Blackburn v. Mann, 85 Ill. 222.

The very words or time or manner of the promise need not be proved, for it may be inferred from circumstances. Greenleaf on Ev., Vol. 1, 62; Wightman v. Coats, 15 Mass. 1.

An express promise is not necessary; it may be inferred from the language, conduct and relations of the parties. Greenup v. Stoker, 3 Gilm. 202; Burnett v. Simpkins, 24 Ill. 264; Rockafellow v. Newcomb, 57 Ill. 186; Blackburn v. Mann, 85 Ill. 222.

Our courts have held that a contract upon an immoral consideration is void, but there seems to be a disposition to make a distinction as to marriage contracts. The case of Morton v. Fenn, 3 Dougl. 211, is cited with approval by our Supreme Court in Tubbs v. Van Kleek, 12 Ill. 446, and the language of Lord Mansfield used therein is quoted and adopted. In that case the evidence was that a man of fortune

in Jamaica, aged seventy, promised to marry the plaintiff, a widow of fifty-three, if she would go to bed with him that night, which she did, and lived afterward with him a considerable time.

It appeared also that the defendant several times afterward repeated his resolution to marry her, but that he afterward married another woman. The jury found a verdict for the plaintiff with $2,000 damages. A rule *nisi* for a new trial having been obtained on the ground that it was *turpis contractus*, being on condition of the plaintiff going to bed with the defendant, Lord Mansfield said: " The parties were not in *pari delicto*, but this was a cheat on the part of the man."

MR. PRESIDING JUSTICE BOGGS DELIVERED THE OPINION OF THE COURT.

This was an action of assumpsit brought by the appellee against the appellant to recover damages for the breach of promise of marriage.

The case was tried before a jury who returned a verdict for the appellee and assessed her damages at $3,500, and returned also answers to special interrogatories propounded to them, which will be hereafter referred to as occasion may require; upon which verdict the court gave judgment against appellant, who appealed. When testifying in his own behalf the appellant was asked by his counsel: "Did you at any time since you have known Miss Sterrett, promise to marry her ? The court, upon the objection of the appellee, refused to permit appellant to answer this question.

This is assigned for error. We think the ruling of the court in this respect wrong, but as the appellant in answer to other questions subsequently propounded was allowed to and did testify that " nothing about marrying was ever talked about between us—nothing of the kind at any time," and upon cross-examination he testified that " he never in his life said a word about marrying her," it seems perfectly clear that the appellant was really permitted to and did state to the jury all that could have been stated, had he been allowed to answer the excluded question. It is next urged

that the only promise of marriage proven was in considera-
tion that the appellee should permit the appellant to have
illicit sexual intercourse with her, and that such an agree-
ment or promise is opposed to public policy and void. At
the request of the appellant the court required the jury to
answer the following interrogatory:

"6th.    Was there any other promise made by the defend-
ant to marry the plaintiff, except the promise that he would
marry her if she would have sexual intercourse with him?"
The answer of the jury to this question was "yes." We
have examined the testimony as found in the record, and are
of opinion that whether a promise was made other than the
one that was in consideration of sexual intercourse was, in
view of all the evidence, a fair question of fact for the jury
to determine. To recapitulate the evidence of the appellee
as to the conversations between herself and the appellant
concerning marriage, or to insert in this opinion extracts
from letters written by the appellant to the appellee, or to
state the testimony produced as to the conduct and relations
of the parties and other facts proven from which a mutual
agreement might be inferred, could be of no service to any
one and would unduly lengthen the opinion. It must suffice
to say that we are not warranted in regarding the finding
of the jury as in this respect manifestly against the weight
of the evidence.

Moreover, an express and formal promise is not necessary;
a promise may be inferred from the language, conduct and
relations of the parties. Rockafellow v. Newcomb, 57 Ill.
186; Blackburn v. Mann, 85 Ill. 222.

And as it is urged that there is no proof of an acceptance
by the appellee, of the promise or offer of marriage, it may
be as well to here state that an acceptance may be proven
and inferred, as may the request or promise to marry. 2
Amer. and Eng. Ency. of Law, page 521, and note 4.

The appellant requested the court to submit to the jury
for answer, eight special questions of fact; four of which
were submitted and answered, but the court refused to sub-
mit the remaining four. The action of the court in that

respect is assigned for error. The first question was: Did the defendant promise to marry the plaintiff? This was submitted to the jury. Question No. 2 was: If you have answered "yes" to question 1, then when and where did he make the promise? It was properly refused. It would be unreasonable and wholly impracticable to require juries to reduce to writing the evidence upon which they based their conclusion upon an ultimate fact, and to state time when, and place where, litigants entered into agreements. Special findings should be restricted to ultimate facts. C. & N. W. R. R. v. Dunleavy, 129 Ill. 143. The eighth refused question was for the same reason properly refused. The fourth and fifth refused questions, except so far as they were immaterial, were given in the third and sixth questions which were submitted.

Complaint is made that improper instructions were given for the appellee. But two instructions were given in that behalf. The first instructs the jury that a contract of marriage may be proven by direct or circumstantial evidence.

The objection to this instruction does not question its correctness, so far as the abstract legal rule is declared, but the complaint is stated in appellant's brief as follows: "It was the word of the plaintiff against the word of the defendant, and not a case depending on circumstantial evidence at all." The visits paid by the appellant to the appellee, in the apparent character of a suitor, during the years 1889, 1890 and 1891, the fact that he accompanied her to church and to an oyster supper, that he told Lottie Sparks that "He loved the appellee and had loved her from the time he first met her," and the letters written by him to her in which he addressed her as "Darling Nanny," "Dearest Buzz" or "Dear old chum," etc., etc., calls her "little sweetheart," and assures her that "no one has so nearly occupied all of his thought for the last year as she" asks her to "keep my love for yourself," and as an excuse for addressing her in the endearing manner employed by him, says: "If any one else has a better right to address you in such words I would like to know who it is," etc., etc., all of which appeared in

the proof, are undeniably circumstances which were proper for the consideration of the jury in connection with the testimony of the appellee, and quite sufficient to warrant the court in giving the instruction to the jury.

The second instruction given for the appellee complained of by the appellant is as follows:

" 2.    You are instructed that under a declaration charging a promise to marry upon request, or within a reasonable time, such request need not necessarily be made by the plaintiff herself, and in this case, if you find from the evidence that there was a valid, subsisting contract of marriage between the plaintiff and defendant, and that no definite time was fixed by the parties in the contract, then the law would presume a contract to marry within a reasonable time; and if you further believe from the evidence that after a reasonable time from the making of said contract and before the commencement of this suit, the plaintiff herself or any one authorized by her for that purpose, called upon the defendant and requested him to marry the plaintiff, and that he refused and neglected to do so, then you should find the issues for the plaintiff."

The counsel for appellant insist that it appears from the testimony of the appellee that after the alleged promise to marry had been made by the appellant, she told him at one time not to come back to see her again and sent him away; that he did not visit her, or write to her again for nearly a year, and that this constituted an abandonment of the contract on her part and operated to release him from all past promises, and that this instruction ignores such abandonment of the contract and directs the jury to find for the appellee, if they found that there was at any time a valid subsisting contract of marriage.    The purpose of this instruction, clearly, was to inform the jury that if a contract of marriage be made and no definite time fixed for the celebration of the marriage in law, the contract is one to be performed in a reasonable time, and if a contract is made to marry upon request, that the plaintiff may make such request by an agent as well as by herself.    It is true that the instruction

is so inartistically drawn that it is not entirely free from the objection suggested against it.

It is, however, manifest to us that the cause of the appellant was not unjustly affected by this instruction. If it be conceded that the dismissal of the appellant by the appellee ought to be regarded as an abandonment of the contract and as a severance of their relations as betrothed lovers, yet the uncontroverted evidence is that he wrote to her asking to be allowed to " come back;" that she consented, and he came, visited her and wrote letters to her as before.

True, no formal promise of marriage is claimed to have been made after this resumption of the former relations between the parties, nor was any necessary. The parties simply resumed their former relations and obligations at the request of the appellant.

Instruction No. 5 asked by the appellant and refused, ought not have been given. By it the court was asked to instruct the jury that if the appellee rescinded the contract by refusing to allow the appellant to visit or see her for about a year that she could not recover, except upon proof that appellant made another promise of marriage, after he was allowed to return to her. If we are right, a formal new promise was not necessary to restore the parties to their former position or to revive the obligations that had been previously entered into. The court ruled correctly in refusing instructions No. 6, 7, 8, 9 and 17, asked by appellant. Each of these instructions advised the jury that if they believed that the defendant promised the plaintiff to marry her in consideration that she would have sexual intercourse with him, such promise was void and that the verdict must be for the defendant. These instructions were not refused because they announced the rule that a promise of appellant to marry appellee on condition that she would have carnal, illicit intercourse, could not be enforced, but because each of the instructions directed the jury to find a verdict for the defendant if such a promise was proven.

That a promise was made on that immoral consideration was admitted by the appellee, but the evidence tended to

show, and as the jury found, did show, that other promises or obligations, free from such illegal taint, were made or existed, and a right of recovery could not be denied if such other promises were proven. Therefore the direction of each of the instructions in question to find for the defendant if an illegal promise was proven, vitiated them.

The jury found specially that the appellant made other promises than the one based upon the illegal consideration. So it is clear that the appellant was not convicted by the jury upon the void contract mentioned in any of the refused instructions. We think the criticism upon the action of the court in modifying appellant's instruction No 17, hypercritical, but, however that may be, the finding of the jury that the appellant made promises of marriage other than the promise that was based upon her consent to have sexual intercourse with him, disposes of all substantial objections that might be urged against the modification.

We listened with pleasure to an exhaustive review of the merits of this case presented by oral arguments of counsel for the respective parties, and in addition thereto have carefully examined the evidence as preserved in the bill of exceptions, and considered the legal points raised by counsel, and are of the opinion that there is no such error in the record as to demand a reversal of the judgment. It is therefore affirmed.