# MARCH, 1896.

### J. N. BROWN ET AL. v. JESUS PEREZ.

#### No. 385.—Decided March 9, 1896.

**1. Argument of Counsel.**

The trial court has better opportunity than the appellate to judge whether improper remarks of counsel have prejudiced the case of the opposite party; and where such remarks were promptly checked by the court they will not usually be considered ground for reversal. (P. 286.)

**2. Refusing Proper Charge Not Always Error.**

Refusal of a charge which it was not improper to give is not ground for reversal where the issue to which it related was fairly submitted by the charge given. See opinion for such charges. (P. 286.)

**3. Impeachment of Witness—Reputation at Former Residence.**

Where the testimony of a witness is such that it fairly raises the question of his veracity, or where the testimony of other witnesses relating to his character at or near the time of the trial tends to impeach his character for truth and veracity, or in case the person whose character is in issue has removed beyond the jurisdiction of the court or has been transient, so that he has no fixed and known residence for a time sufficient to make a reputation for truthfulness, resort may be had to evidence of the reputation of such witness at the place of his former residence and at a time remote from the time of trial. (Pp. 286 to 290.)

ERROR to Court of Civil Appeals for the Fourth District, in an appeal from Atascosa County.

Action of trespass to try title by heir of original grantee against defendants holding under a deed from original grantee, the genuineness of which was attacked.

*Simpson & Onion,* for plaintiffs in error.—In order to properly qualify himself, an impeaching witness must know the reputation for truth and veracity of the witness sought to be impeached, in the community in which he lives at the time of the trial, or, at least, must know the reputation of the latter at some recent date not remote from the time he testifies. Greenleaf on Evidence, sec. 461; Rice on Evidence, 629; Ayres v. Duprey, 27 Texas, 599; Johnson v. Brown, 51 Texas, 75; Clapp v. Engledow, 72 Texas, 256; Trammell v. State, 10 Texas Ct. of App., 468;

Carroll v. State (Texas Crim. App.), 24 S. W. Rep., 101; Linz v. Skinner, 32 S. W. Rep., 915; White v. Commonwealth, 28 S. W. Rep., 340; Combs v. Commonwealth, 29 S. W. Rep., 735; Aurora v. Cobb, 21 Ind., 510; Abshire v. Mather, 27 Ind., 384; Chance v. Gravel Company, 32 Ind., 475; Stratton v. State, 45 Ind., 473; Rucker v. Beaty, 3 Ind., 70; Rawles v. State, 56 Ind., 439; Sun Fire Office, etc., v. Ayerst, 55 N. W. Rep., 635; Marion v. State, 29 N. W. Rep., 915; Fisher v. Conway, 21 Kan., 25; 19 Ohio St., 278.

Where counsel use inflammatory remarks in argument to the jury, and same are unwarranted by the evidence, and calculated to prejudice the jury against the complaining party, especially where the evidence is conflicting, the judgment should be reversed and remanded for a new trial. Railway v. Jones, 73 Texas, 235; Dillingham v. Scales, 78 Texas, 206; Nunnally v. Taliaferro, 82 Texas, 289; Railway v. Jarrell, 60 Texas, 268; Willis v. McNeill, 57 Texas, 474; Railway v. Butcher, 83 Texas, 314; 74 Texas, 154; 75 Texas, 323; Fordyce v. Withers, 1 Texas Civ. App., 545.

*Franklin & Cobbs,* for defendant in error.—The witness Estevan De la Garza claims to have been a subscribing witness to the deed which is alleged to have been a forgery. His testimony shows that the grantee in this deed requested him to witness the alleged signature of the grantor, and that he not only subscribed said deed as a witness, but also made for the alleged grantor his signature thereto. This witness therefore presents himself as testifying continuously to the execution of said deed by the said grantor from the date of the alleged signature in 1854 down to the present time. Any testimony showing his reputation for truth and veracity during any of those years is relevant and admissible upon the question whether the deed was or was not a forgery.

Where a witness signs a deed at the request of the grantor he is called by the grantor to at all times witness the execution of the instrument. This is so true that in order to prove up a deed for admission in evidence under the common law the testimony of the subscribing witnesses must be first produced or their absence accounted for before other evidence of such execution is admissible. The testimony of such witness is the primary evidence of execution. Where, as in this case, the grantor swears that he neither executed the instrument nor called upon the witness to subscribe the same, but the witness swears that he subscribed the deed at the request of the grantor, such witness puts in issue his reputation for truth and veracity at all times from the date of the alleged deed up to the moment he testified. The alleged forged deed was not introduced as an ancient instrument, but upon proof of its execution by the witness Garza. The persons holding under said deed, therefore, produce Garza as the witness selected by the grantor to attest his signature. They say he signed as a witness and attested the grantors signature. We say that attestation is false, and as relevant to that issue we show the witness' reputation to have been bad when he so attested. Hollenbach v. Flem-

ing, 6 Hill, 303; 1 Greenleaf on Evidence, sec. 569; 1 Devlin on Deeds, sec. 257.

BROWN, Associate Justice.—Jesus Perez sued J. N. Brown and others, plaintiffs in error, to recover a league and labor of land situated in Atascosa County, granted by the State of Texas to the heirs of Diego Perez. Defendants below pleaded not guilty. Judgment was rendered for the plaintiff.

No question is made that plaintiff Jesus Perez is the only heir of Diego Perez. Defendants hold under a regular chain of transfers from A. Superville and claim that A. Superville acquired title to the land by a transfer of the certificate, by virtue of which it was located, made to him by the plaintiff herein. The sole question in the case was the genuineness of the alleged transfer from plaintiff to Superville, the execution of which the plaintiff denied

The transfer from plaintiff to Superville bears date March 25, 1854. It begins in this language: "Know all men by these presents that I, Anselmo de Jesus Perez, of the county of Bexar and State of Texas, son and sole heir of Diego Perez, deceased," etc., describing and transferring the certificate by virtue of which the land was located. At the bottom of the deed for the name of the grantor is written "Jose de Jesus Perez," with a cross for his mark. It is attested by two witnesses whose names are signed "Esteban de la Gza," with a mark above the last "a" resembling the letter "l," as written with a pen, and "Ramon Garcia." The certificate of proof before Sam S. Smith, county clerk, recites that "Roman Garcia appeared and proved the deed as witness thereto." The latter named witness was shown to be dead at the time of the trial.

Jesus Perez testified upon the trial that he did not sign the transfer nor make his mark thereto, nor did he authorize any other person to do so.

One Buquar testified that he was present and saw the plaintiff make his mark to the deed while the pen was held by Estevan de la Garza. This witness Buquar was impeached by a large number of witnesses who testified that his reputation for truth and veracity in the neighborhood in which he lived was bad.

Estevan de la Garza testified by two depositions. The first taken in 1887 and the second in 1894. He testified that he wrote the name "Jose de Jesus Perez" to the deed and held the pen while the plaintiff, whom he identified, made his mark thereto, and that he and Ramon Garcia signed the said deed as witnesses thereto. In the first deposition, taken in 1887, Estevan de la Garza, in response to a cross-interrogatory propounded to him by the plaintiff, signed his name "Estevan de la Garza" and said that this was his signature. In the second deposition, taken in 1894, the same witness, in response to a cross-interrogatory propounded to him by the plaintiff, signed his name the same as it was signed as a witness to the deed and testified that he never signed his surname in any other way.

Salvador de la Garza and Rafael de la Garza each testified in substance

that he knew the witness Estevan de la Garza and knew his reputation for truth and veracity in the community in which he lived, and that it was bad and that he did not believe he was entitled to belief on oath, and that he would not believe him on oath. Salvador de la Garza testified on cross-examination that he had not seen Estevan de la Garza since the year 1863, and did not know where he had resided since that time, and did not know where he then resided; and Rafael de la Garza testified that he had known Estevan de la Garza about twenty or twenty-five years ago, more or less, but that he had not known him for many years. He saw him on the trial of this cause in March, 1892. Whereupon the defendants by counsel moved the court to strike out the impeaching testimony of said witnesses on the ground that it was shown that they did not know the reputation for truth and veracity of the said witness Estevan de la Garza in the community in which he lived and had not qualified themselves to so testify, which motion was overruled by the court. The court, however, did not act upon the motion at once but held it up until after the defendants had introduced a witness—one Buquar—who testified that he had known Estevan de la Garza for many years and knew his reputation for truth and veracity and that it had been good for fifty years. After this testimony was admitted the court overruled the motion to strike out the impeaching testimony upon the ground that it was admissible in rebuttal of the testimony of the witness Buquar.

The witness Estevan de la Garza testified that he went to Mexico in 1866 and returned to Texas in 1874; that he again left for Mexico in 1878 and returned to Texas about 1883, remained in Texas until the former part of 1892, when he went to Mexico, returned in about six months and has remained here ever since.

The two witnesses Salvador and Rafael de la Garza each testified that they knew Estevan de la Garza well and that he was not known as "Estevan de la Garza," but as "Estevan Garza."

The defendant asked the court to charge the jury as follows: "You are further instructed that if you believe from the evidence adduced in evidence before you that Estevan de la Garza and Ramon Garcia witnessed the execution of the alleged deed of conveyance introduced in evidence from plaintiff Jesus Perez to A. Superville and they saw plaintiff sign or make a mark in signing said instrument, then it is immaterial whether said Estevan de la Garza and Ramon Garcia signed their names in full or whether a letter or letters were dropped from their real names or same were misspelled, and you will find for defendants if you so believe." Which charge was refused by the court. Upon this subject the court charged the jury as follows:

"1. That if you believe from the evidence that plaintiff is the heir of Diego Perez and that he (plaintiff) did not execute and deliver the instrument in writing introduced in evidence in this case as a conveyance from him (plaintiff) to A. Superville of the certificate upon which the land sued for was patented, then you will find for the plaintiff.

"2. If, on the other hand, you believe from the evidence plaintiff

signed said deed or instrument in writing introduced in evidence in this case as a conveyance from him (plaintiff) to A. Superville of the certificate upon which the land sued for was patented or affixed thereto his mark, then in that event you will find for the defendant."

The plaintiffs in error present in this court the following objections to the judgments of the District Court and Court of Civil Appeals:

"1.   That the court erred in not setting aside the judgment, on account of language used by the counsel of plaintiff in argument to the jury.

"2.   That the court erred in refusing the charge asked by the defendants as given above.

"3.   That the court erred in not striking out the testimony of the impeaching witnesses Salvador and Rafael de la Garza."

Upon the trial of this case in the District Court, counsel for the plaintiff in his closing argument used language to which objection was made at the time; the court promptly stopped the counsel and admonished him not to indulge in the use of such language, whereupon the attorney withdrew the objectionable remarks and apologized to the court and the jury for making use of them.   The plaintiffs in error ask us to reverse the judgment of the court below because of this conduct of counsel; but the judge who tried the case did all that could be done to avoid any injury to the defendant by the improper language used.   The district judge was in position to observe the jury during the course of the argument, and could determine whether any injurious effect was produced upon their minds much better than we can by examination of the record, and we presume that if, in the opinion of the trial judge, injury had resulted to the plaintiffs in error he would have granted a new trial.   We do not think, from the record as presented to us, that the error is such as to require a reversal of the judgment.

The charge requested by the defendant and refused by the court, before quoted, was not, in our opinion, upon the weight of the evidence, and if given would not have been improper, but the failure to give it is not reversible error, since the court in its charge fairly submitted the issue to the jury in language that could not have been misunderstood.

It is contended by the plaintiff in error that, when impeaching a witness, the subject of inquiry is his present character for truthfulness. This is a correct proposition, but it does not follow that all evidence upon that issue must relate to the present; in fact, as has been often said by courts, it must in some degree refer to the past.   There is much apparent conflict in the decisions of the courts upon the question whether evidence of bad reputation at a remote period and in the place of a former residence is admissible to impeach a witness; when, however, the cases are examined carefully the conflict is found to be more apparent than real.   The circumstances under which each decision has been made being different, the language used by the courts appears to be in conflict, until the facts are looked to from which it appears that there is agreement in the general principle applied.   In the states of Indiana, Ken-

tucky, Michigan and some others the rule that the evidence must be confined to the recent past and to the present residence of the witness sought to be impeached seems to be pretty well established and generally adhered to. (City of Aurora v. Cobb, 21 Ind., 492; Rogers v. Lewis, 19 Ind., 405; Webber v. Hanke, 4 Mich., 198; Young v. Commonwealth, 6 W. P. D. Bush, 312.) This rule, however, is not inflexible in Indiana and Michigan, as will appear by reference to the following cases: (Keator v. People, 32 Mich., 484, and M. & O. R. P. Co. v. McColl, 83 Ind., 392.) In each of the last two cases the courts varied the rule before announced in that court according to the facts of the particular case, conforming to the weight of authority on the question.

In the case of Mynatt v. Hudson, 66 Texas, 66, the question row under consideration was before this court. The witness sought to be impeached had resided in Johnson County for a number of years, but at the time of the trial and for four years prior thereto had resided in Erath County, where the trial was had. Residents of the former county who had not known the impeached witness for four years were offered to prove his bad character for truth and veracity in the county of Johnson when he resided there. The evidence was admitted over the objection that "the witnesses could not state the reputation of the impeached witness at the time they testified in the neighborhood in which he then lived;" which is practically the same objection presented in this case. This court held that there was no error in admitting the evidence. Judge Stayton, delivering the opinion of the court, said: "If during the long period the appellant resided in Johnson County his general reputation for truth and veracity was bad, this was a fact, considering his mature age when he was there residing, which the jury might consider in determining whether his evidence was entitled to credence. The law does not presume that a person of mature age, whose reputation has been notoriously bad to within a period such as intervened between the time the appellant resided in Johnson County and the time when the witness testified, has so reformed as to have acquired a different reputation.

"The evidence offered may not have been entitled to so much weight as if it had related to his reputation in the community in which he lived at the time the testimony was given, yet it was such as the jury might consider and was subject to rebuttal by evidence showing a different reputation at the time of the trial in the community in which he resided."

It will be observed that in the case last cited the trial was had in the county where the witness then resided, and plaintiff could have summoned his neighbors who knew him at that time; nor was there any circumstance shown which made it necessary to resort to the former home and associates for evidence of his character; the decision rests upon the legal presumption that a character once established continues until a change be shown. We think it a stronger case in support of the ruling of the trial court in the present case than any to be found in the reports of other states, although the period of time did not exceed four

years. The doctrine of that case as hereinafter qualified is supported by the following authorities: People v. Abbott, 19 Wend., 192; Sleeper v. Van Middlesworth, 4 Den., 431; Rathbun v. Ross, 46 Barb., 127; Holmes v. Stateler, 17 Ill., 453; Blackburn v. Mann, 85 Ill., 222; Snow v. Grace, 29 Ark., 131; Boswell v. Blackman, 12 Ga., 591; Watkins v. State, 82 Ga., 231; Kelly v. State, 61 Ala., 19; Stetson v. E. Carver Co., 97 Mass., 403.

In the case of People v. Abbott, supra, the character of the witness had been slightly impeached by testimony referring to a time near that of the trial; evidence was then admitted relating to a more remote period of time, and the court said: "The character of the prosecutrix for truth and veracity had already been slightly impeached when it was proposed to follow that up by showing that it was also bad several years before. The inquiry is not in its nature limited as to time. The character of the habitual liar or perjurer several years since would go at least to fortify the testimony which would now fix the same character to the same person. Witnesses must speak on this subject in the past tense. Character cannot be brought into court and shown to them at the moment of trial. A long established character for good or for evil is always more striking and more to be relied on than that of a day or a month."

In the following cases before cited it was shown that the witness sought to be impeached had been roaming from place to place for a number of years; and in each case the court held evidence admissible for the purpose of impeachment which referred to places other than the present residence and to a time several years anterior to the date of trial. Snow v. Grace; Blackburn v. Mann; Holmes v. Stateler. In the last case the court said: "If, during the eleven years the witness resided in that county (his former home) his character was bad, it might well have authorized a jury to presume that his testimony was not entitled to their entire confidence. It is true that this evidence may not have been entitled to as much weight as would evidence showing that it was bad at the time of the trial by the testimony of witnesses who were then acquainted with his reputation among his neighbors, but still it was beyond all doubt competent to be considered by the jury. If the testimony offered was incompetent, then might the most abandoned man, by floating about from Iowa to California for six or seven years, not staying long enough at any one place to establish a character, be introduced upon the stand as a witness and set all impeachment at defiance. The witness, it is not doubted, might have reformed since he left Marshall County, but it does not necessarily follow that he did reform. If he did so reform, it was quite as easy for the plaintiff to prove that fact as for the defendant to prove that his character still continued bad."

In Teese v. Huntington, 23 Howard, 2, the trial court excluded testimony offered to impeach the character of a witness, the impeaching witness having testified that he did not know the character of the witness sought to be impeached at the time of the trial, nor in the place of his then residence, but that he did know his character in a different place five

years prior to the time of trial. The Supreme Court of the United States sustained the ruling of the trial court in excluding the evidence because it was matter of discretion in the court trying the case, and said in reference to the time, "as the law cannot fix that period of limitation it must necessarily be left to the discretion of the court." We do not mean to say that any slight contradiction in the testimony of a witness would justify the resort to this kind of evidence at so remote a date, nor that it is entirely in the discretion of the trial judge to determine the question of its admissibility. It must, however, in the nature of things be largely left to his discretion in view of the fact that he can better understand the circumstances surrounding the trial than an appellate court can upon an examination of the record, and his ruling should not be revised except where the circumstances clearly show that the discretion allowed has been improperly exercised.

Upon authority and sound principles, we think it may safely be said that where the evidence of a witness is such that it fairly raises the issue of his veracity or where the testimony of other witnesses relating to his character at or near the time of the trial tends to impeach his character for truth and veracity, or in case the person whose character is in issue has removed beyond the jurisdiction of the court, or has been transient, so that he has no fixed and known residence for a time sufficient to make a reputation for truthfulness, resort may be had to evidence of the reputation of such witness at the place of his former residence and at a time remote from the time of trial. No definite rule can be stated which will apply to all cases. Circumstances other than those stated might exist which would render it impracticable to make proof of the reputation of the witness at or near the time of trial or at the place of his residence at that time, and would authorize resort to this kind of evidence. We think the opinion in Mynatt v. Hudson extends the rule too far and that it should be so qualified as to bring it within the terms and limitations above stated.

In the case now before the court, the character of the testimony of Estevan de la Garza, the evident contradictions of himself, and the circumstances surrounding the transaction with which he was connected, were such that they might be considered as impeaching his then character for truth and veracity. He had been absent from the State in a foreign country at different times during a period of near thirty years, not shown to have had at any time any fixed place of abode, nor indeed at what point in Mexico he resided at any time or whether at the same place for any given length of time. Under these circumstances the testimony of the witnesses introduced by the plaintiff to impeach his character, although at a very remote period, was admissible to go to the jury, its weight and value to be determined by them. The plaintiff could not be expected to know the whereabouts of the witness in a foreign country nor to know the persons with whom he was associated there. If his character had become better, defendants could have made the proof, for

they must have known the abode of the man, at least they had the better opportunity to learn it.

We therefore conclude that there was no error in admitting the testimony of Salvador and Rafael de la Garza as to the former bad character of the witness Estevan de la Garza under the circumstances of this case.

The testimony offered to impeach the witness de la Garza was not admissible for the reason that it was in rebuttal of the testimony of Buquar which was offered to support the character of that witness. The impeaching testimony had been first introduced and a motion had been made to strike it out, which should have been done, if it were not admissible as original testimony. The court having failed to act upon the motion, the defendants were required to proceed with their defense and must necessarily support their witness, if they could, in anticipation of the adverse action of the court upon their motion. But, as we have said, the testimony was properly admitted in the first instance and the reason given by the court in its qualification of the bill of exceptions, although not correct, does not constitute error.

We find no error in the judgment of the District Court or the Court of Civil Appeals in this case and we therefore affirm the judgments of the said courts.

*Affirmed.*

DENMAN, J., did not sit.