Jack Adams McDOLE, Appellant,

v.

The STATE of Texas, Appellee.

No. 56734.

Court of Criminal Appeals of Texas, Panel No. 2.

April 4, 1979.

---

**8**

Dick DeGuerin, Houston, for appellant.

Carol S. Vance, Dist. Atty., Clyde F. DeWitt, III, and William E. Taylor, III, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

Before DOUGLAS, ROBERTS and ODOM, JJ.

### OPINION

DOUGLAS, Judge.

Jack Adams McDole appeals his conviction for possession of cocaine. Punishment was assessed by the court at twelve years. McDole's sole contention on this appeal is that the cocaine was seized as a result of an illegal warrantless search. We agree and reverse.

The evidence concerning the legality of the search was developed at both a pre-trial suppression hearing and in greater detail at the trial. We will consider the evidence of both in reviewing the validity of the search. See *Hicks v. State,* 545 S.W.2d 805 (Tex.Cr.App.1977).

The facts were established primarily through the testimony of Officer J. J. Reyes. He testified that, during the early evening of September 8, 1975, he received a telephone call from a confidential informant who had given his reliable information on three previous occasions. The informant stated that a possible "deal" was going to happen later that night. At 10:15, the informant called and stated that he had just left the apartment of Gary Mafrige and that there was a quantity of cocaine in the apartment. Reyes began to prepare the search warrant application and sent two officers out to the scene to set up a surveillance. At 10:30 p. m., Reyes was "partially half-way through" the warrant when he called Justice of the Peace Larry Wayne to determine his availability to sign the warrant and to ask if he had sufficient probable cause. At 10:31 p. m., while still on the telephone with Wayne, the informant called again to say that the people in the apartment would soon be leaving. Reyes informed Wayne of this and Wayne told Reyes to go ahead and search the apartment. Reyes abandoned his efforts to obtain the search warrant. Some time between 10:55 p. m. and 11:00 p. m. he and several other officers arrived at the Mafrige apartment and met with the officers who set up the original surveillance. Twenty minutes later they entered the apartment, conducted a warrantless search and arrested all of the occupants. Reyes also testified that it would take between sixty and ninety minutes to obtain a warrant.

In most cases our State and Federal Constitutions prohibit a search of a private residence without a search warrant. Article 1, Section 9, Texas Constitution; Amendment Four, United States Constitution.

In the instant case, Reyes received information at 10:15. It would have taken between sixty and ninety minutes to obtain the warrant. It could thus be available between 11:15 and 11:45. Officers, who could stop anyone leaving the residence, had it under surveillance. At 10:30 Reyes was told the residents would be leaving shortly. He abandoned his efforts to obtain the warrant. The raid was conducted between 11:15 and 11:20.

A warrant could have been obtained within a matter of minutes of the time the warrantless arrest was made. This case is unlike the situation presented in *Thompson v. State*, 447 S.W.2d 175 (Tex.Cr.App.1969). In *Thompson*, an officer approached the house with an invalid search warrant. He heard someone ask, "Have you finished shooting yet?" and then looked in the window and observed an individual preparing to make an injection into his arm. We held that since the officers had sufficient probable cause to search based on their observations the search would not be unlawful because it was conducted under color of the invalid warrant. The instant case does not present a situation where a valid exception to the warrant requirement developed immediately prior to the search.

There is an indication that the officers sought to justify this search on the oral approval of the justice of the peace. If this were allowed, it would constitute an "oral search warrant." Article 18.01, V.A.C.C.P., provides, "A 'search warrant' is a *written* order . . . ." A written warrant allows the officer to show his authority to the "person who has charge of" the place to be searched as required by Article 18.16, V.A. C.C.P. It also facilitates subsequent judicial review of the validity of the warrant. Thus, a search warrant must be in writing because both the statute and sound policy requirements demand that it be so.

For the above reasons, the evidence introduced was wrongfully seized, and its introduction into evidence was error.

The judgment is reversed and the cause is remanded.