**Charles Victor SANNE and Doyle Edward Skillern, Appellants,**

v.

**The STATE of Texas, Appellee.**

**Nos. 63254, 63255.**

Court of Criminal Appeals of Texas, En Banc.

Sept. 10, 1980.

Rehearing Denied Nov. 5, 1980 for No. 63254.

Rehearing Denied Dec. 10, 1980 for No. 63255.

---

**764**

Allen C. Lee, Rockport, for Sanne.

David B. Connery, Jr., Houston, for Skillern.

William L. Hardwick, County Atty., George West, Thomas L. Bridges, Dist. Atty., Sinton, Charles D. Butts, Sp. Pros. Atty., San Antonio, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

These are appeals from convictions for capital murder. Appellants were charged as parties to the offense and were tried together a second time after the first conviction was reversed by this Court. *Skillern v. State*, 559 S.W.2d 828. Punishment was assessed at death in each case after the jury returned affirmative answers to the punishment issues submitted under Article 37.071, V.A.C.C.P.

Eighteen grounds of error have been raised by Sanne and twenty-three by Skillern. For convenience, we will group together for discussion those grounds from the two briefs which touch upon similar points of law.

The sufficiency of the evidence to convict has not been challenged by either appellant. The facts forming the basis of this prosecution are summarized in the opinion on the appeal of the first conviction. *Skillern v. State*, supra. In addition, Sanne took the stand in his own behalf at the second trial and admitted shooting the deceased, but claimed he acted in self-defense.

### SANNE'S JEOPARDY ISSUE

In his first and second grounds of error Sanne urges that the trial court committed reversible error in refusing to grant his pretrial motion of former jeopardy and in refusing to instruct the jury to answer "No" to the second punishment issue under Art. 37.071, V.A.C.C.P. He bases his argument on the jury's finding in his first trial that he would not commit criminal acts of violence that would constitute a continuing threat to society, and the consequent assessment of life imprisonment. As a result of the first jury's decision, Sanne contends, he should not have been forced to run the risk of being assessed the death penalty in his second trial.

Recently, in *Brasfield v. State*, 600 S.W.2d 288, this Court held that the principle of *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57

L.Ed.2d 15 (1978) applies to the appellate court's reversal of a death penalty on the basis of insufficient evidence to sustain the jury's affirmative answer to the second punishment issue. Accordingly, it was held that the State could not again seek the death penalty against the defendant. The defendant, therefore, was accorded the protection upon retrial which accrued to him when the appellate court found as a matter of law that life imprisonment was the only verdict permissible under the evidence. A fortiori, when, as in the case at bar, the defendant has in fact received a favorable verdict on the issue of future dangerousness in his first trial, he should be entitled to the same protection against having his life placed in jeopardy a second time. We hold, then, that having received a favorable answer to the second punishment issue in his first trial, appellant Sanne should not have been subjected to the risk of receiving the penalty of death upon his retrial following reversal of his first conviction, and that his punishment must be reformed from death to life. This holding, however, affects only the punishment stage, and does not affect the jury's determination of appellant's guilt of the crime charged. We therefore must consider the other grounds of error addressed to the guilt stage of appellant Sanne's trial.[1]

## JURY SELECTION ISSUES

Skillern's fifth ground of error raises a challenge to the constitutionality of Article 35.13, V.A.C.C.P., which provides in part:

"A juror in a capital case ... held to be qualified, shall be passed for acceptance or challenge first to the state and then to the defendant. Challenges to jurors are either peremptory or for cause."

The claim is made that it violates the equal protection and due process clauses of the state and federal constitutions to require the defendant in a capital case to exercise peremptory challenges upon the examination of individual prospective jurors, and to deny him the right of the defendant in a non-capital felony case to make a sensible and circumspect exercise of his peremptory challenges after examination of the entire venire.

Assuming, without deciding, that this constitutional challenge is not without merit, we are constrained to find that harm has not been demonstrated under the facts of this case. The flaw in Skillern's argument is that he has not shown that he would have exercised his peremptory challenges differently, and that a jury he did not want was impaneled as a result of the procedure followed. That such a showing is incumbent upon defense counsel may be extracted from the rules previously enunciated by this Court with respect to determination of harm arising from jury selection errors, discussed in *Payton v. State*, Tex.Cr.App., 572 S.W.2d 677.

We will describe two methods that could have been used to show the harm required to preserve this constitutional challenge for review. On the one hand, a defendant may choose to *use* a peremptory challenge to exclude a prospective juror while claiming he should have the right to reserve the strike until after the entire venire has been questioned. In such a case, harm would be shown by use of all peremptory challenges, denial of a request for additional peremptory challenges, and the seating of a juror upon whom the defendant would have exercised peremptory challenge. This rule allows correction of any error by giving the defendant an extra peremptory challenge for use against the venireman the defendant would have stricken if given a choice between him and the venireman against whom a peremptory had already been used.[2]

---

1. Sanne's fifteenth, sixteenth, seventeenth, and eighteenth grounds of error raise various contentions pertaining to the punishment phase of this prosecution. Since the judgment is to be reformed to reflect a sentence of life imprisonment, thus giving Sanne the most favorable verdict possible in this type of case, none of these grounds need be discussed. *Phelps v. State*, Tex.Cr.App., 594 S.W.2d 434; *Marini v. State*, Tex.Cr.App., 593 S.W.2d 709.

2. The similarity between this rule and that applicable in the case of an improper denial of a challenge for cause should be apparent. See

In the case at bar the record reflects two occasions on which Skillern exercised peremptory challenges while claiming the right to reserve them. He did not, however, show a request for additional peremptory strikes after exhaustion of his peremptory challenges, the next vital step in demonstrating harm. No error has been shown *from this standpoint.*

On the other hand, a defendant may, as Skillern did with respect to two veniremen, join the issue by *declining to use* a peremptory challenge to exclude a prospective juror while claiming he should have the right to reserve the strike. In such a situation, the defendant must show that at the end of examining the venire, he made a retroactive request *to* exercise his peremptory challenges in the manner to which he claims he is entitled. In this way, the trial court is accorded the opportunity to nullify any error stemming from adherence to the complained of procedure. In the case at bar, the record fails to reflect that Skillern made such a request. Accordingly, we do not reach the merits of this ground of error. The fifth ground of error is overruled.

█ Skillern's ninth ground of error asserts the trial court erroneously sustained the State's challenge for cause to venireman Frank Garza. He claims that Garza was excused in violation of the doctrine of *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).[3] Specifically, appellant argues that Garza should not have been excused because it was brought out that he could vote for the death penalty in a case where a very close friend was the victim. Prior to this testimony, the prosecutor had elicited the following from Garza:

*Payton,* supra. There, the extra peremptory challenge compensates for the one used against the venireman who was subject to challenge for cause.

**3.** The same claim is advanced by Sanne in his fourth ground of error. As to him, however, the contention is moot and need not be discussed. In *Phelps,* supra, this Court stated:
"... *Witherspoon* is inapplicable to a case where the jury votes for a sentence of

"... Now, do you have any conscientious scruples against voting for or giving the death penalty as a punishment for crime in the proper case?

"A. Yes, sir.

"Q. You do have?

"A. I'm against capital punishment.

"Q. I see. Now, when you say, 'against capital punishment,' are you telling us that you could not, under any circumstances as a juror, vote for a verdict that would result in that being the penalty?

"A. I'd have to vote against it. I just don't believe in capital punishment.

\*   \*   \*   \*   \*   \*

"Q. Are you telling us that you can think of no circumstances or no fact situation, regardless of how severe were the facts, knowing that that might be the penalty if you voted to find someone guilty, you could not do so because that would be the result?

"A. Yes, I couldn't vote for capital punishment."

In *O'Bryan v. State,* 591 S.W.2d 464, this Court held that a prospective juror who stated that the only circumstance under which he could vote for the death penalty was if the victim was a member of his family was properly excused under *Witherspoon.* The reasoning of that decision is quoted below, because it applies with equal force in the instant case:

"... [I]t is apparent that venireman Bowman could consider capital punishment only if the victim of the crime were a member of his family. In such a circumstance, venireman Bowman would be unable to serve as a juror *because of his interest and prejudice in the case.* Arti-

life imprisonment and there is no evidence that the jury selection process produces a jury that is necessarily 'prosecution prone.' *Bumper v. North Carolina,* 391 U.S. 543 [88 S.Ct. 1788, 20 L.Ed.2d 797] (1968)."
This principle should hold equally true where, as in the present case, life imprisonment is assessed as a matter of law. Sanne's fourth ground of error is overruled.

cle 35.16, Vernon's Ann.C.C.P. The ability to consider capital punishment as a tool of vengeance by a person aggrieved by the loss of a family member is surely not within the contemplation of *Witherspoon*. No other group would be more predisposed to vote for capital punishment than a jury composed of surviving members of the deceased victim's family. The situation in which Bowman could consider the imposition of death as a penalty is the situation which *Witherspoon* proscribes—the imposition of the death penalty by a 'hanging jury.'

"The voir dire of Bowman revealed that he would not vote for capital punishment in a case where he was otherwise qualified to sit as a juror. In those situations, Bowman was resolved to vote against capital punishment, regardless of the evidence produced. He was properly excused under *Witherspoon*." (Emphasis added.)

The only circumstance under which venireman Garza stated he could vote for the death penalty was if the victim were a very close friend. Just as in *O'Bryan*, where the juror stated he could vote for the death penalty only if the victim was a member of his family, Garza's exception to his opposition to the death penalty would render him unable to serve as a juror because of his interest and prejudice in the case. Article 35.16, V.A.C.C.P. In addition, the ability to consider the capital punishment where a close friendship existed between the venireman and the victim of the crime is a situation sufficient to be outside the contemplation of *Witherspoon*. This ground of error is overruled.

■ Sanne's seventh ground of error and Skillern's eleventh challenge the trial court's refusal to grant motion for mistrial when the court excused Dorothy Jean Lassiter Turner for illness after she had been accepted and sworn as a juror, but before the jury was completed. It is contended that it was reversible error for the court to complete the selection of the jury, rather than discharge those jurors who had been sworn and begin the selection process anew. We disagree with the appellants' contentions.

It was proper to excuse this juror when it became apparent she would be unable to serve. Under Articles 35.16 and 35.19, V.A. C.C.P., the juror was absolutely disqualified. That the juror had been sworn did not render these provisions inapplicable. Jury selection had not been completed. The trial court acted correctly in selecting a juror to replace the one excused. The rule of *Ellison v. State*, 12 Tex.App. 557, 580 (1882) that

"... [A]fter a juror has been once impaneled in a felony case, it is beyond the power of the court to excuse him from serving in the case, and that in case of sickness or accident rendering it impracticable to proceed with the trial of the case before the jury as then constituted, the court shall discharge that jury and proceed to form another for the trial of the case."

is hereby overruled.

■ In this same ground of error appellant Sanne urges that he was twice placed in jeopardy when the juror was excused, reasoning that jeopardy attached once the individual juror had been qualified and sworn. Long ago, this Court answered this very contention adversely to Sanne's position. In *Steen v. State*, 242 S.W. 1047 (1922) the Court addressed the merits of a plea of jeopardy which arose when it was discovered that the fifth of six jurors who had been sworn was absolutely disqualified. The trial court discharged all six, and continued the case until the next term. The court wrote:

"No jury, within any construction of that word supported by any authority known to us, was charged with his deliverance. Six men alone were impaneled. They could not render a verdict in a felony case. *The jurors, in the capacity of a jury, were never impaneled.*" (Emphasis added.)

In the present case, as in *Steen*, a "jury" had not been impaneled when the individual juror was excused. A jury had not been impaneled so jeopardy had not attached.

See, *Crist v. Bretz,* 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 265. These grounds of error are overruled.

■ Sanne's eighth ground of error and Skillern's seventh ground of error address the action of the trial court in excusing venireman Willard Clifford Anderson sua sponte upon discovering a defect in hearing and without a challenge for cause from the State. This contention is without merit. In *Valore v. State,* Tex.Cr.App., 545 S.W.2d 477, the Court stated:

"A trial court should not, sua sponte, excuse prospective jurors for cause unless they are absolutely disqualified. *Pearce v. State,* Tex.Cr.App., 513 S.W.2d 539; *Henricksen v. State,* Tex.Cr.App., 500 S.W.2d 491."

Under Articles 35.16(a)(4) and 35.19, V.A.C. C.P., a defect in hearing rendering a prospective juror unfit for jury service is an absolute disqualification. The trial court acted properly in excusing venireman Anderson. See *Redd v. State,* Tex.Cr.App., 578 S.W.2d 129.

■ Skillern's sixth, tenth, and twelfth grounds of error predicate error upon the trial court's action in overruling his challenges for cause to three prospective jurors. The three grounds can be dealt with together, inasmuch as Skillern has not shown how he was harmed by the impaneling of these jurors. Although Skillern exhausted his peremptory challenges, the trial court gave an extra one without request, and this extra strike remained unused. Skillern has not taken the steps prerequisite to a showing of harm. *Payton v. State,* Tex.Cr.App., 572 S.W.2d 677.

■ Skillern makes the further contention that the trial court improperly restricted his cross-examination of venireperson Bracht. In *Emanus v. State,* Tex.Cr.App., 526 S.W.2d 806, the Court discussed the situation in which counsel's voir dire examination has been limited as to one prospective juror only. It was stated:

"The test for ascertaining harm in such cases is whether the trial judge's limitation of the voir dire examination amounted to an abuse of discretion, thus depriv-ing appellant of a valuable right. (citations omitted.)"

It was also observed that in such cases:

"The fact . . . that appellant did not exercise all his peremptory challenges, is relevant . . . and mitigates the harmfulness of any error."

In the case at bar there was no abuse of discretion. The prospective juror stated she could render an impartial verdict. The proposed questions were cumulative of those already asked and answered. Moreover, appellant Skillern did not exercise all his peremptory challenges. Error, if any, was harmless. *Emanus,* supra. Skillern's sixth, tenth, and twelfth grounds of error are overruled.

■ Skillern's eighth ground of error questions the action of the trial court "in advising prospective juror Ollie Gray, implicitly, that this defendant may have had a prior felony record." The record reflects that objection to the remark was not made at the first opportunity, and no reason for delay has been shown. Therefore, nothing is preserved for review. *Garcia v. State,* Tex.Cr.App., 573 S.W.2d 12. Moreover, our reading of the record convinces us that the court's remark was not improper. This ground of error is overruled.

■ Sanne's thirteenth ground of error contests the denial of his challenge for cause to venireman Harold D. Fields. In view of the fact that appellant expressly accepted the juror and that Skillern exercised a peremptory challenge against this venireman, the contention now made is without merit. This ground of error is overruled.

## EVIDENCE ISSUES

Sanne's tenth ground of error and Skillern's fourteenth ground of error challenge the admissibility of evidence obtained as the result of an arrest and search, which appellants contend were unlawful because made without a warrant. A short account of the facts surrounding the arrest and search will be given first.

Hector Sanchez, then a narcotics agent with the Department of Public Safety, testified he received a telephone call at his home in Harlingen at approximately 10:45 p. m. on October 23, 1974, from agent Dennis Vickery. Vickery requested Sanchez to go out and look for a white-over-orange Camaro vehicle bearing a certain license number. Sanchez also learned from Vickery that the deceased, an undercover narcotics agent, had been seen leaving in this vehicle from a motel in Beeville with two persons, one of whom was driving the Camaro. Vickery told Sanchez to look around Gary Jackson's house in San Benito, because the narcotics that the deceased was to purchase supposedly belonged to Jackson. Sanchez picked up Tom Daniel, his partner, and Sergeant Chris Trevino of the Harlingen Police Department and drove to the area indicated by Vickery. At about 12:05 a. m., after driving in the Harlingen and San Benito areas, Sanchez spotted the vehicle parked at a 7–11 convenience store in Harlingen. He and Trevino kept the Camaro under surveillance while Daniel stationed himself in his car at a short distance. Trevino called the Department of Public Safety dispatcher and learned that the Camaro was on a stolen list. When the Camaro drove away from the store and south on Highway 77, Sanchez and Trevino preceded it and Daniel followed immediately behind it. After proceeding a few miles in this manner, Sanchez stopped the Camaro, which was occupied by appellants. When asked whether he was carrying a weapon, Skillern pointed to his belt. A pistol, later identified as having belonged to deceased, was found and the two appellants were placed under arrest.

Both appellants assert that the officers acted unlawfully in failing to procure a warrant before stopping, arresting, and searching them. Probable cause to stop and detain the occupants of the automobile arose when the officers learned that the automobile was stolen. Since the offi-

cers were faced with a moving vehicle reported as stolen, it was not necessary to procure a warrant before taking action. Unlike the situation presented in *McDole v. State*, Tex.Cr.App., 579 S.W.2d 7, relied upon by Sanne, the facts in the instant case show that a valid exception to the warrant requirement did develop immediately prior to the arrest and search. Arrest was also authorized when Skillern was found in possession of a pistol. All evidence obtained as a result of the arrest was admissible.[4] Moreover, appellant Sanne lacked standing to challenge the admission of the gun, a ring, and money which were taken from the possession of Skillern. *Wilder v. State*, Tex.Cr.App., 583 S.W.2d 349. These grounds of error are overruled.

In Sanne's fourteenth ground of error he argues reversible error was committed when the trial court failed to strike the testimony of the State's ballistics expert, Fred Rymer, when it became apparent that he could not express an opinion respecting S–57, the .38 revolver introduced. We need not reach the merits of this ground. Testifying in his own behalf, Sanne admitted he shot the deceased with a .38 revolver obtained from Red Andrews. This admission would be sufficient to render harmless any error committed in admission of the expert testimony. Moreover, Andrews identified S–57 as the pistol he obtained for Sanne and Skillern. Coupled with Sanne's admission, Andrews' testimony constituted a positive identification of S–57 as the murder weapon. This ground of error is overruled.

In Sanne's eleventh ground of error and Skillern's sixteenth ground of error, complaint is made of the admission of testimony by Eva Gonzales that the Camaro in which appellants were riding when arrested was stolen from her home in Austin. At another point in the trial, in the presence of the jury, testimony that the car was reported stolen was given without objection. Any complaint as to the admission of Gonzales'

4. The record does not support Skillern's contention that there was a general exploratory search of the vehicle. Assuming such did take place, no evidence recovered as a result thereof was admitted at the trial.

testimony was waived. *Crocker v. State,* Tex.Cr.App., 573 S.W.2d 190.

■ Skillern's sixteenth ground of error also urges error in the admission of testimony by Ernest "Red" Andrews bearing on the theft of the Camaro, and on the acquisition of a .38 Smith and Wesson revolver, S–57, identified as the murder weapon. He also challenges the admission of testimony of appellant Sanne regarding other drug transactions in which Skillern was implicated. No objection was made to any of this testimony. Any complaint is therefore waived. These grounds of error are overruled.

■ In his twelfth ground of error Sanne contends the trial court improperly admitted testimony of Bill Jonas because it implicated Sanne in an extraneous offense. Jonas' testimony established that a certain phone number at an address in San Benito was registered to Gary Jackson. The testimony did not, either expressly or by implication, show an extraneous offense. This ground of error is overruled.

■ Skillern's seventeenth ground of error challenges the admission of sixteen different exhibits offered by the State. He alleges that the admission of these had a "cumulative" prejudicial effect. This ground of error is multifarious and presents nothing for review. Art. 40.09(9), V.A.C.C.P. We have, nevertheless, examined the various contentions raised within the single ground of error and have satisfied ourselves that none presents reversible error. This ground of error is overruled.

■ The eighteenth ground of error set out in Skillern's brief is addressed to the admission of testimony by Cruz Sanchez concerning appellant Sanne's reputation for truth and veracity. The prosecutor elicited the following testimony from the witness:

"Q. (By Mr. Butts): Sergeant Sanchez, would you tell the jury whether you know the general reputation for truth and veracity, in the community where he

is best known, of Mr. Charles Victor Sanne?

"A. Yes, sir.

"Q. Is that reputation good or is it bad?

"A. Bad.

"Q. Sergeant Sanchez, is that reputation such as would entitle Mr. Sanne to be believed under oath?"

At this point, and before the last question was answered, objections to Sanchez's testimony were voiced. After some discussion and voir dire of Sanchez by the attorneys representing both appellants, the trial court instructed the jury not to consider the last question, but overruled the motion to strike the entire testimony. Even if it would be timely to object to the testimony after the witness answered that Sanne's reputation was bad, *Clapp v. Engledow,* 72 Tex. 252, 10 S.W. 462 (1888), no objection was made until the next question [5] was asked. The objection, therefore, was not urged at the earliest opportunity and nothing is presented for review. Moreover, cross-examination and voir dire of the witness revealed a basis for his testimony sufficient to qualify him. Any objection based on the remoteness of the time at which the witness became acquainted with Sanne's reputation would go to the weight, not the admissibility, of the testimony. *Brown v. Perez,* 89 Tex. 282, 34 S.W. 725; 62 Tex.Jur.2d, Sec. 288 at 276. This ground of error is overruled.

## PUNISHMENT PHASE ISSUES

■ Appellant Skillern's fourth ground of error raises the contention that it was error to overrule his motion to quash the indictment and his special plea in bar which challenge the constitutionality of Article 37.071, V.A.C.C.P., because the second punishment issue "fails to afford the jury channeled and defined guidance and instruction as to what conduct or other factors may be appropriately considered by them" in determining whether defendant will probably commit criminal acts of violence that would

5. We note the form of the last question asked was correct. *Parasco v. State,* 168 Tex.Cr.R. 89, 323 S.W.2d 257.

constitute a continuing threat to society. This Court has already resolved this issue against appellant in *Jurek v. State*, Tex.Cr.App., 522 S.W.2d 934, affirmed 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929. The fourth ground of error is overruled.

In his twentieth ground of error Skillern complains of the admission, at the punishment phase, of the indictment alleging murder with malice of his brother, and of testimony by Ernest "Red" Andrews, that he was with Skillern and Sanne when they joked about having buried Skillern's brother under a concrete patio and that Skillern said he should have killed his brother's wife instead of his brother because she was the uglier of the two. Andrews also testified he made a trip to Houston with Skillern and Sanne for the purpose, which was never carried out, of burglarizing a house. Andrews related that when it was discovered that the "old man" was at home, Skillern said they would "just have to take care of" him. Skillern argues that all these matters exceeded the scope of "prior criminal record" under Art. 37.07, Sec. 3(a), V.A.C.C.P. We disagree.

The contention that the indictment alleging murder with malice should not have been admitted because the conviction was for murder without malice was answered squarely against Skillern in *Fairris v. State*, Tex.Cr.App., 515 S.W.2d 921.

The evidence of joking conversations and the abortive burglary plans was admissible under Art. 37.071(a), V.A.C.C.P. The trial court has wide discretion in admitting or excluding evidence at the punishment phase of a capital murder trial. *Hammett v. State*, Tex.Cr.App., 578 S.W.2d 699, 709 and cases cited; Art. 37.071(a), V.A.C.C.P. ("evidence may be presented as to any matter that the court deems relevant to sentence"). In *Wilder v. State*, 583 S.W.2d 349, 361, this Court addressed the issue of admission at the punishment stage of a capital murder trial of statements by the defendants that they participated in a similar extraneous offense. It was held:

"The statements introduced below were relevant to the jury's determination of *all*

*three* questions under Article 37.071, supra. They shed light on both deliberateness and appellants' future criminal tendencies." (Emphasis added.)

In *Jurek v. State*, Tex.Cr.App., 522 S.W.2d 934, 939–940, the Court stated:

"In determining the likelihood that the defendant would be a continuing threat to society, the jury could consider whether the defendant had a significant criminal record. *It could consider the range and severity of his prior criminal conduct* . . . ." (Emphasis added.)

And in *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), the Supreme Court of the United States discussed the jury questions under Article 37.071, and significantly stated:

"What is essential is that the jury have before it all possible relevant information about the individual defendant whose fate it must determine."

In the case at bar, the evidence of the joking conversation was relevant, as were the statements in *Wilder*, on all three punishment issues. The same is true of the evidence of Skillern and Sanne's abortive plan to burglarize a Houston home, particularly the mention of readiness to kill if necessary to carry out their plan. See also *Garcia v. State*, Tex.Cr.App., 581 S.W.2d 168, 178–179. The evidence was properly admitted and this ground of error is overruled.

In his fifteenth ground of error Skillern strenuously urges that the trial court erred in admitting the testimony of Dr. Joseph C. Rupp during the punishment phase of the trial because Rupp was shown to be incompetent to render an opinion on the second punishment issue, Article 37.071, V.A.C.C.P. We agree that Rupp, a practicing forensic pathologist, was not shown to be qualified to render an *expert* opinion under a hypothetical fact situation based on evidence introduced, that "there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." The trial court could not properly have found, as

was required before qualifying Dr. Rupp as an expert witness, that he "had such skill, knowledge or experience" about human behavior "that it was probable his opinion would be of assistance to the jury in making a factual determination of whether there was a probability that appellant would commit criminal acts of violence and be a continuing threat to society in the future." *Battie v. State,* Tex.Cr.App., 551 S.W.2d 401, 407. Nor does the record reflect that Dr. Rupp had sufficient, if any, firsthand familiarity with Skillern's personal history to qualify him to express a lay witness opinion that Skillern would be a continuing threat to society. Cf. *Esquivel v. State,* Tex.Cr.App., 595 S.W.2d 517 (not error to allow former assistant district attorney and district attorney to express opinion with regard to probability of future acts of violence by defendant, based on knowledge of defendant's rape conviction and subsequent criminal history). The witness was not qualified to express his opinion that Skillern would be a continuing threat to society.

Although it was error to allow Dr. Rupp to express his opinion as to the second punishment issue, our examination of the record in its entirety leads us to conclude that the error was harmless beyond a reasonable doubt. In making this determination, the question answered is whether there is a reasonable possibility that the evidence complained of might have contributed to the verdict. See *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Cunningham v. State,* Tex.Cr.App., 500 S.W.2d 820. We must look to the facts and circumstances of each case. *Ex parte Flores,* Tex.Cr.App., 537 S.W.2d 458.

Apart from Dr. Rupp's improper testimony, the evidence introduced at the punishment stage showed that appellant Skillern had been convicted in 1972 of murder without malice for the shooting of his brother and of passing a forged instrument. The testimony of "Red" Andrews with regard to the joking attitude taken by Skillern to-

ward the murder, as well as Andrews' testimony concerning the plans to burglarize a house in Houston and to kill if necessary, has already been summarized. At the guilt-innocence stage, appellant Sanne testified he, Andrews, and Skillern had participated in a fifty pound marihuana deal in the Valley.

The facts of the offense charged are also relevant in the assessment whether the improper testimony of Dr. Rupp resulted in harm. At the guilt stage, Dr. Rupp testified that his general impression from viewing the scene was that the deceased had been taken unawares by someone who fired multiple shots from his right side. He stated that "there is an element of over-kill when you empty a revolver into the side of a victim." At the punishment phase, Rupp noted it was his impression that the deceased was suddenly shot without any chance for him to defend himself. Additionally, it should be noted that after shooting the deceased the appellants returned to the motel room where they had met him and took his wallet which contained, among other things, money that had been issued to him by the State. It was also established that a diamond ring belonging to the deceased was taken from the possession of Skillern. Further, at the time the appellants were arrested a pistol later identified as belonging to deceased was taken from Skillern.

On the basis of the foregoing summary of the evidence, which we believe was abundant in demonstrating appellant Skillern's antisocial personality, it is our conclusion that "the minds of an average jury would not have found the State's case [on the second punishment issue] less persuasive" had Dr. Rupp's opinion testimony not been admitted. See *Cunningham,* supra. The admission of this testimony was harmless error. This ground of error is overruled.

The sufficiency of the evidence to submit the second punishment issue and the trial court's failure to define the terms "probability" and "criminal acts of violence," used in the submission of that issue, are the subjects of Skillern's twenty-second

ground of error. Our discussion of the last issue makes it clear that the evidence presented at the punishment phase, together with the evidence presented at the guilt phase, was sufficient to support the jury's verdict on the second punishment issue. In *King v. State*, Tex.Cr.App., 553 S.W.2d 105, it was held that the trial court need not provide special definitions for the terms "deliberately," "probability," "criminal acts of violence," or "continuing threat to society." This ground of error is overruled.

In his twenty-first ground of error, Skillern argues there was no evidence to support submission of the first and third punishment issues in his case because Sanne did the shooting. It is established that the law of parties applies to these punishment issues in a capital murder case. *Smith v. State*, Tex.Cr.App., 540 S.W.2d 693. This ground of error is overruled.

Skillern's nineteenth ground of error presents ten separately numbered contentions pertaining to the jury charge given by the trial court. This ground of error, which is multifarious, is not in compliance with Article 40.09(9), V.A.C.C.P. and presents nothing for review. Moreover, none of the various complaints have any merit. This ground of error is overruled.

### OTHER ISSUES

Sanne's fifth ground of error challenges the trial court's refusal to grant his pre-trial motion for severance. He argues he did not have any prior felony convictions admissible against him and that the co-defendant Skillern did. Therefore, he contends, the mandatory provisions of Article 36.09, V.A.C.C.P., were violated when the severance was not granted. We disagree. In *Robinson v. State*, 449 S.W.2d 239, this Court wrote:

"As we interpret Article 36.09, supra, the mandatory ground for severance that one defendant has 'a previous admissible conviction' against him is applicable only where one defendant has no prior criminal record or at least no prior admissible conviction and the co-defendant has a prior conviction or convictions which are

admissible. *At either stage of the bifurcated trial, if the defendants all have prior admissible convictions*, the ground for severance must be based on the fact that 'a joint trial would be prejudicial' as a result thereof, i. e., the nature of the prior convictions against one defendant, the large number of such convictions admissible against one defendant as compared to those admissible against the other defendant, etc. Such ground for severance, however, is addressed to the sound discretion of the trial judge."

In the present case the State stipulated to co-defendant Skillern's prior convictions. Although it was alleged that the probationary period of Sanne's prior conviction had expired, no evidence was offered in support of this allegation. Thus, Sanne's prior conviction was admissible at either stage of the trial. Articles 37.07, Sec. 3(a), 37.071, and 38.29, V.A.C.C.P. A severance was not mandatory. Further, no evidence was offered to show how Sanne would be prejudiced by a joint trial with his co-defendant. Absent supporting evidence, no abuse of discretion could have occurred in overruling the motion. *Ransonette v. State*, Tex.Cr.App., 550 S.W.2d 36, 41; *Robinson v. State*, supra. This ground of error is overruled.

Appellant Sanne's sixth ground of error complains of the trial court's failure to grant his motion for severance at the end of the guilt stage and before evidence on the punishment phase was heard. This contention is without merit for two reasons. First, the motion was not timely urged. *Robinson*, supra. Second, we have already reached a result favorable to appellant with respect to his double jeopardy claim addressed to punishment. This ground of error, therefore, need not be considered. See *Marini v. State*, Tex.Cr.App., 593 S.W.2d 709.

Skillern's thirteenth ground of error presents his contentions with regard to the trial court's failure to grant his motion for severance. No evidence was offered in support of the motion, either at the pre-trial stage or when it was reurged prior to the

testimony of co-defendant Sanne. The failure to present evidence in support of the motion is reason enough to sustain the trial court's action. *Robinson,* supra. At the time the motion was presented and refused there was no showing that the trial court was apprised of the allegedly inconsistent defenses. The contention as to this aspect of the motion for severance is without support in the record. See *Calverly v. State,* Tex.Cr.App., 511 S.W.2d 60; *Bolding v. State,* Tex.Cr.App., 493 S.W.2d 186. Skillern's thirteenth ground of error is overruled.

In Sanne's ninth ground of error it is asserted that the trial court abused its discretion in failing to grant his pre-trial motions for continuance for a two-week period in order to prepare for trial. The effect of the trial court's action, Sanne contends, was to deny him the effective assistance of counsel. We are not convinced that error has been shown.

Sanne's basic contention is that the time from the date counsel was appointed, February 20, to the date the trial commenced, March 13, was insufficient in view of the complexity and gravity of the case. At a pre-trial hearing held on March 8, the trial court authorized the maximum amount of five hundred dollars allowed by statute for investigative expenses. See Article 26.-05(1)(d), V.A.C.C.P. Appellant argues, however, that there was not enough time between the pre-trial hearing and the commencement of trial in which to procure the services of an investigator or ballistics expert. However, Sanne has not shown by bill of exception or motion for new trial what testimony would have been obtained from such investigator or expert. As to this contention, nothing is preserved for review.[6]

Additionally, Sanne's counsel places emphasis on the fact that this was his first capital murder trial and' that he was deprived of an essential opportunity to familiarize himself with the record in the first trial. At the pre-trial hearing, counsel testified he had read the statement of facts from the first trial, but that he felt he also needed to read the voir dire examination of prospective jurors. This testimony demonstrates that counsel did discharge his burden of acquainting himself with the facts of the case. Cf. *Flores v. State,* Tex.Cr.App., 576 S.W.2d 632. On the basis of the record before us, we cannot say that appellant Sanne was denied effective assistance of counsel. The claim is not, as it must be in order to be meritorious, firmly founded. *Faz v. State,* Tex.Cr.App., 510 S.W.2d 922, 926. Absent a showing of how he was prejudiced by the fact that counsel had only twenty-two days to prepare his defense, we cannot agree that the trial court abused its discretion in overruling Sanne's motion for continuance. See and compare *Davis v. State,* Tex.Cr.App., 513 S.W.2d 928; *Hicks v. State,* Tex.Cr.App., 508 S.W.2d 400; *Coleman v. State,* Tex.Cr.App., 481 S.W.2d 872. Sanne's ninth ground of error is overruled.

The failure to grant a motion for continuance is the subject of Skillern's first ground of error. Like Sanne, he focuses upon the short time given to prepare his defense and his lack of familiarity with the record of the first trial as the chief factors authorizing the continuance. He did not, however, offer proof of facts which the denial of his motion prevented him from discovering and proving, nor did he at any time state with specificity how any lack of familiarity with the record in the first trial adversely affected his handling of the instant prosecution. Skillern's claim that assistance of counsel was rendered ineffective by failing to grant the continuance is not firmly founded or supported by the record. See *Faz,* supra. Skillern's first ground of error is overruled.

In his third ground of error, Sanne urges reversible error was committed

---

**6.** Sanne's brief and supplemental brief also make reference to counsel's lack of opportunity to file a motion to set aside a former conviction when the period of probation had expired and to investigate the background of the deceased as to his propensity to violence and use of alcohol. Neither of these matters was mentioned in his motion for continuance or at the hearing thereon, and therefore are not reflected in the record on appeal.

when the trial court refused to grant his pre-trial motion for the appointment of additional counsel. Initially, we emphasize that appellant has failed to demonstrate that he was harmed by the trial court's ruling. Moreover, his reliance upon the "category of cases" principle set forth in *United States v. Watson*, 496 F.2d 1125 (4th Cir. 1973) and adopted by this Court in *Batten v. State*, Tex.Cr.App., 533 S.W.2d 788, is misplaced. As the State's brief succinctly notes, application of the "category of cases" theory presupposes the existence of a statutory provision addressed to the issue in question. Thus, in *Batten* it was held that when a prosecution is brought in Texas under the capital murder statutes, the defendant is entitled to all the procedural guarantees, including fifteen peremptory challenges of prospective jurors as provided by Article 35.15, V.A.C.C.P., whether or not the State "seeks" the death penalty. In contrast, Article 26.04, V.A.C.C.P., the statute which provides for the appointment of counsel for the indigent defendant, leaves the number of appointed counsel to the discretion of the trial court and does not distinguish between capital and non-capital cases. Thus, the "category of cases" principle is not applicable since there is no mandatory provision for the appointment of additional counsel in a capital case. Absent a showing of harm, it cannot be said that the trial court abused its discretion in refusing appellant's request. See generally, *Henry v. State*, Tex.Cr.App., 433 S.W.2d 430. This ground of error is overruled.

Skillern's complaint regarding the trial court's failure to appoint additional counsel is embodied in his second ground of error. As we have stated in passing on Sanne's claim, a defendant does not have an absolute right to the appointment of more than one attorney. In his motion addressed to this matter, Skillern sought the appointment of Douglas Tinker, who represented him in the first trial of this case. In *Ochoa v. State*, Tex.Cr.App., 492 S.W.2d 576, the defendant had filed a motion requesting that two named persons be permitted to assist his two court-appointed counsel. In holding the defendant's claim that his court-appointed counsel were ineffective to be without merit, it was stated:

"We have examined the record and find that the [appointed] counsel ... actively participated in the trial, closely cross-examined the witnesses, and presented appellant's defense. There is an absence of any showing they were ineffective."

In the present case, there is no showing that Skillern did not receive adequate representation of counsel as the result of failure to appoint, or re-appoint, Douglas Tinker or to appoint any other additional counsel. Skillern's second ground of error is overruled.

Appellant Skillern's third ground of error urges, without supporting argument or citation of authority, that the trial court erred in denying his motion to quash the indictment because the indictment failed to disclose affirmatively that it was presented subsequent to the date of the alleged offense. The indictment alleges that the offense was committed "anterior to the presentment of this indictment, ..." This was sufficient to meet the requirement of Article 21.02(6), V.A.C.C.P. This ground of error is overruled.

Skillern's twenty-third, and final ground of error raises the allegation that he was denied his right of cross-examination and his right to effective assistance of counsel on numerous occasions throughout the trial when the trial court assumed the role of the prosecution. We have reviewed the record and have not discovered any conduct that would merit serious discussion.

As reformed to punishment by confinement for life, the judgment in cause no. 63,254, Sanne's appeal, is affirmed. The judgment in cause no. 63,255, Skillern's appeal, is affirmed.

CLINTON, J., not participating.

PHILLIPS, Judge, dissenting.

An examination of this record reveals several reversible errors. The majority's treatment of these grounds of error is whol-

ly inadequate. For the reasons that follow, I dissent to the affirmance of these convictions.

I.

During the punishment phase of the trial, the state presented expert testimony on the issue of future dangerousness. The state elicited this testimony not from a psychiatrist or a psychologist, but from the pathologist who performed the autopsy on the deceased. In response to a hypothetical question, the pathologist expressed his opinion to a "reasonable medical certainty" that Doyle Skillern would constitute a continuing threat to society.

Skillern contends that the admission of this evidence, over his objection, was reversible error. The majority concedes that the trial court erred in permitting the pathologist to render an expert medical opinion on the second punishment issue. The majority concludes, however, that this error was harmless beyond a reasonable doubt.

In evaluating the majority's conclusion, it must be kept in mind that a jury's determination on the second punishment issue is qualitatively different from its determination on the guilt-or-innocence issue. Predicting future dangerousness is far less precise than resolving the issue of guilt or innocence. With this crucial difference in mind, let us now consider the type of evidence whose admission the majority deems harmless error.

It is widely recognized that many lay persons show an inordinate amount of deference to members of the medical profession. Consequently, prosecutors go to great lengths to obtain psychiatric testimony on the second punishment issue. They obviously believe that such testimony significantly influences a jury's punishment deliberations.

The only distinction between this testimony that prosecutors find so valuable and the testimony in the instant case is that here the testimony was given by a pathologist rather than a psychiatrist. However, the circumstances under which the pathologist testified suggest that this distinction was largely lost on the members of the jury. When defense counsel objected on the ground that the pathologist did not have the training and experience to render an expert medical opinion on the second punishment issue, the trial court made the following comment in the presence of the jury:

THE COURT: There is no question but what the jury makes the decision but *this witness is a medical doctor and I believe that the testimony shows that he has studied human behavior, had experience with it,* and is giving this testimony to aid the jury, if it does. Overruled. (emphasis added.)

This statement was an expression of the trial court's opinion that the pathologist's training and experience in the field of human behavior qualified him to render an expert medical opinion on the issue of future dangerousness. As such, it constituted a comment on the weight of the evidence, in violation of Article 38.05, V.A.C.C.P. This comment enhanced the pathologist's standing in the eyes of the jury, thereby compounding the court's error in admitting his testimony. Moreover, the court permitted the pathologist to express his opinion in terms of a "reasonable medical certainty."

Expert medical testimony on the second punishment issue can have a significant impact on a jury's punishment deliberations. In holding that the admission of such testimony was harmless error, the majority necessarily concludes beyond a reasonable doubt that the pathologist's testimony could not have influenced even one of the 12 jurors to vote "yes" rather than "no" on the second punishment issue. Even viewed in its most favorable light, the majority's position is untenable.

At trial it was undisputed that Sanne, not Skillern, shot the deceased. Notwithstanding Skillern's prior conviction for murder without malice, jurors reasonably could have answered "no" to the second punishment issue. Jurors have supplied a negative answer to this issue in cases far more egregious than the present one. *See* D.

Crump & G. Jacobs, Capital Murder (1977) (the cases of John Stiles Griffin and Bernardino Sierra are cogent examples).

The majority's assertion that the pathologist's testimony could not have changed the vote of even one juror is a bold departure from reason. It simply cannot be concluded with the required degree of certainty that the admission of this evidence failed to contribute to the jury's assessment of the death penalty. The majority errs in holding this error harmless.

## II.

Both Skillern and Sanne contend that the trial court committed reversible error in overruling their motions for a continuance. They submit that the court gave defense counsel insufficient time to prepare for trial. In separate grounds of error, they complain of the court's refusal to appoint a second defense attorney. The basic thrust of both claims, according to appellants, is that the trial court's actions denied them effective assistance of counsel. Under the facts of this case the two claims are functionally inseparable, and for that reason I will treat them together.

The record reflects that the trial court appointed one defense attorney to represent each appellant and set their cases for trial on March 13, 1978. This date was 21 days after the appointment of counsel. On three

separate occasions the defense attorneys asked for a continuance because they needed more time to prepare for trial. On each occasion they specifically stated to the court their reasons for needing more time. In spite of the compelling nature of defense counsel's reasons, the court overruled all requests for a continuance.

One reason given by the defense attorneys was that they needed more time "to fully read and digest the voluminous record of the [prior] trial," at which appellants were represented by other counsel.[1] The attorneys pointed out that only one copy of that record was available, which they had to share.[2] The attorneys also told the court that sufficient time to review the record from the prior trial was essential to their providing effective representation.

The record reflects that the trial court gave defense counsel insufficient time to familiarize themselves with the statement of facts from the prior trial.[3] The value of a transcription of the court reporter's notes from a prior proceeding has been recognized by the Supreme Court. *See Britt v. North Carolina*, 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971). Where a defendant is indigent, the failure to furnish a free transcription generally is reversible error. *Id.* The corollary of appellants' right to have the statement of facts from the prior trial is that their attorneys must be given

---

1. That trial resulted in convictions that were reversed on appeal. *See Skillern v. State*, 559 S.W.2d 828 (Tex.Cr.App.1977). The record from that trial consists of 14 volumes and approximately 4,000 pages.

2. Skillern's attorney testified that it was necessary for Sanne's attorney to have the statement of facts during the week of February 20–26 because the following week Sanne's attorney had prior commitments.

3. Skillern's attorney testified that he had insufficient time to review the statement of facts. He added that such a review was necessary for proper trial preparation. Sanne's attorney testified that he had no time to read the parts of the statement of facts that concerned the argument of the preliminary motions and the examination of prospective jurors. He explained that a review of the voir dire was necessary because this was his first capital murder case.

The majority attaches great significance to the testimony of Sanne's attorney that he had the opportunity to read the testimony of the witnesses from the prior trial. This position ignores the value of other parts of the statement of facts. To render effective assistance of counsel, an attorney must become acquainted with the law of the case. *Flores v. State*, 576 S.W.2d 632 (Tex.Cr.App.1978). In several respects the law applicable in capital cases substantially differs from that applicable in noncapital cases. Because this was the first capital murder case for Sanne's attorney, an opportunity to review the voir dire and the argument of the preliminary motions would have been a valuable tool for his becoming acquainted with the law unique to capital cases. By denying him this opportunity, the trial court impaired Sanne's right to effective assistance of counsel.

enough time to read and familiarize themselves with it. By refusing to grant a continuance to allow defense counsel sufficient time to study the record, the trial court denied appellants effective assistance of counsel.

The defense attorneys also sought a continuance because they needed time to interview the key witnesses. Counsel pointed out that at the prior trial the state called more than 50 witnesses, none of whom lived anywhere near Rockport.[4] The attorneys stated to the court that interviewing some of these witnesses was absolutely essential to their providing effective assistance of counsel.

In response, the court suggested that reading the record of the prior trial was an adequate substitute for interviewing witnesses. Defense counsel were quick to point out the inadequacies of this approach. First, they had too little time to fully acquaint themselves with the record. Second, they were unable to evaluate the credibility of the witnesses by reading the record. Third, their reading of the record raised numerous questions that could be resolved only by interviewing witnesses. Moreover, the record of the second trial reflects that the state called critical witnesses who did not testify at the first trial.

After jury selection had been completed but before the evidentiary phase of the trial had begun, the trial court told defense counsel that they would be given an opportunity to interview the state's witnesses before they took the stand. However, the record reflects that because of the trial process defense counsel were able to interview only a few of the state's witnesses.

In Flores v. State, 576 S.W.2d 632 (Tex. Cr.App.1978), this Court held that "an attorney must acquaint himself ... with ... the facts of a case before he can render

reasonably effective assistance of counsel." Writing for the Court, Presiding Judge Onion set forth the factors to be considered in determining the size of defense counsel's burden to become acquainted with the facts:

... The size of the burden on the counsel to acquaint himself with the facts will vary of course depending upon the complexities of the case, the plea to be entered by the accused, the punishment that may be assessed, and other such factors ...

Id. at 634. See Callaway v. State, 594 S.W.2d 440, 445 (Tex.Cr.App.1980).

When the factors enunciated in Flores are applied in the present case, it is clear that the defense attorneys had an enormous burden to acquaint themselves with the facts. Both appellants pleaded not guilty, and both were subject to the death penalty.[5] There was the usual complexity in a capital case of selecting a jury in accordance with Witherspoon v. Illinois,[6] and V.T. C.A.Penal Code, § 12.31(b). Compare Adams v. Texas, —— U.S. ——, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980) with Moore v. State, 542 S.W.2d 664 (Tex.Cr.App.1976). In addition, for a variety of reasons appellants' cases were unusually complex: (1) the voluminous record from the prior trial; (2) none of the state's witnesses lived in the county where the second trial was held; (3) the joint trial; (4) the unusually large number of witnesses called by the state; (5) the disputed issue involving ballistics; and (6) the expert medical testimony presented by the state on all three punishment issues.

Discharging the burden to become acquainted with the facts is not strictly an armchair pastime. Usually it requires that witnesses be interviewed and the facts otherwise investigated. Although studying the record from a prior trial is critical, it is not

---

4. Venue of appellants' cases was changed from Live Oak County to Aransas County.

5. Sanne filed a pretrial motion of former jeopardy concerning the death penalty because at his prior trial the jury answered the second punishment issue in the negative. The trial court overruled this motion, thereby subjecting

Sanne to the death penalty. We recently have held, however, that the principles of double jeopardy apply to this situation. Brasfield v. State, 600 S.W.2d 288 (Tex.Cr.App.1980).

6. 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).

an adequate substitute for independently investigating the facts. Unless counsel conducts an independent investigation, there is no way of knowing whether counsel at the prior trial adequately investigated the case.

In spite of the enormous burden on the defense attorneys to acquaint themselves with the facts, the majority concludes that counsel discharged this burden merely by reading the testimony of the witnesses from the prior trial. I cannot agree that such minimal preparation discharged this burden, nor can I associate myself with such a cavalier attitude toward an accused's constitutional right to effective assistance of counsel.

In the present case the record clearly shows that the trial court gave defense counsel insufficient time to interview witnesses and otherwise investigate the facts. This situation was not remedied by the court's authorization of $500 for investigation and expert testimony. The record also shows that, notwithstanding the defense attorneys' diligence, they had insufficient time to obtain the services of either an investigator or a ballistic expert.[7] In light of the enormous burden on defense counsel to acquaint themselves with the facts, the conclusion is inescapable that the trial court gave them insufficient time to discharge this burden. As a result, appellants were denied effective assistance of counsel, and the court's refusal to grant a continuance constituted an abuse of discretion.

In the alternative, given the 21 days allowed for trial preparation, the trial court abused its discretion in overruling appellants' motions for appointment of a second defense attorney. Had the court granted this motion, the 21 days might have been enough time for two defense attorneys to render effective assistance of counsel. Although I do not advocate a rule requiring the appointment of two defense attorneys in all capital cases, the complexity of such cases strongly suggests that appointing two attorneys almost always would be the better practice. This is especially true where, as here, at least one attorney had never before tried a capital case.

### III.

In three grounds of error, Skillern contends that the trial court erred in overruling his challenges for cause to three prospective jurors. The majority summarily disposes of these grounds on the theory that Skillern failed to show how the trial court's rulings harmed him. The majority's treatment of these contentions is as follows:

> ... The three grounds can be dealt with together, inasmuch as Skillern has not shown how he was harmed by the impaneling of these jurors. Although Skillern exhausted his peremptory challenges, the trial court gave an extra one without request, and this extra strike remained unused. Skillern has not taken the steps prerequisite to a showing of harm. *Payton v. State*, Tex.Cr.App., 572 S.W.2d 677.

Peremptory challenges are exercised differently in capital cases than in noncapital cases. In noncapital cases peremptory challenges are made after all prospective jurors have been questioned. *See* Arts. 35.25 & 35.26, V.A.C.C.P.; *Fuller v. State*, 409 S.W.2d 866 (Tex.Cr.App.1966). In capital cases, however, such challenges are exercised at the time a prospective juror is examined. *See* Arts. 35.13, 35.17, & 35.20, V.A.C.C.P.; *Fuller*, supra. In spite of this critical difference, the majority applies to a capital case a harmless error rule devised in the context of noncapital cases. *See Hernandez v. State*, 563 S.W.2d 947 (Tex.Cr. App.1978). The majority does so, without discussion or analysis, even though the application of this rule to capital cases is illogical.

Applying this rule to capital cases would make sense only if a defendant were permitted to exercise unused peremptory challenges after all prospective jurors had been examined. But such a procedure would violate the Code of Criminal Procedure. *See* Arts. 35.13, 35.17, & 35.20, supra; *Fuller*, supra. Moreover, in the present case the

---

7. The defense attorneys told the court that they needed to obtain the services of a ballistic expert. At the prior trial the court admitted in evidence a .38 revolver, and there was a disputed issue as to whether this was the murder weapon.

trial court twice refused Skillern's request that he be allowed to reserve the exercise of his peremptory challenges until all prospective jurors had been examined.[8]

The errors Skillern alleges could be rendered harmless only if he had been given three extra peremptory challenges that he was entitled to use retrospectively. Instead, he was given one extra challenge that could be used only prospectively. Consequently, the majority errs in holding that Skillern failed to show harm because he did not use his extra peremptory challenge.

Because of the errors discussed above, I dissent to the affirmance of these convictions. The judgments should be reversed and the causes remanded.

ROBERTS, J., joins in dissent.

---

8. [Skillern's attorney]: Your Honor, Defendant Skillern has no challenge for cause and, at this time, I will reserve my right to exercise any peremptory strikes.

THE COURT: Reserve it? Either accept the juror or challenge her peremptorily.

[Skillern's attorney]: Your Honor, that denies the defendant the right that he has in any non-capital criminal case in this State to have impaneled a number of qualified jurors who are not subject to challenge for cause and then exercise sensibly and intelligently the limited number of peremptory strikes that are available to him. I object to that procedure and for that reason claim my right to defer exercising peremptory challenges until the panel is completed.

THE COURT: Well, either accept the juror or reject her. . . .

\*    \*    \*    \*    \*    \*

[Skillern's attorney]: Your Honor, Defendant Skillern offers no additional challenge for cause and again I reserve the right to make peremptory challenges until such time as—

THE COURT: Make it now.

[Skillern's attorney]: Has the Court overruled my right to reserve peremptory challenges at a time later? Let the record reflect that I reiterate the same objection that I have before.

THE COURT: All right. Same ruling. . . .