Appellant=s Motion for Rehearing Granted; Affirmed; Opinion of January
25, 2007 Withdrawn and Substitute Opinion filed April 12, 2007











Appellant=s Motion for Rehearing Granted; Affirmed; Opinion of January 25, 2007 Withdrawn and Substitute
Opinion filed April 12, 2007.  

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-05-01129-CR

_______________

 

CHARLES SCOTT, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 228th District Court

Harris County, Texas

Trial Court Cause No. 991,259

                                                                                                                                                

 

S U B S T
I T U T E  O P I N I O N

We grant appellant=s motion for
rehearing.  Our opinion dated January 25, 2007 is withdrawn, and we issue this
substitute opinion.








A jury found appellant, Charles Scott, guilty of aggravated
sexual assault of a child and sentenced him to seventy-five years= confinement.  In
four issues, appellant contends the trial court erred by (1) excluding
testimony from a witness regarding the complainant=s reputation for
untruthfulness, (2) allowing an unlisted witness to provide expert testimony 
(3) allowing a witness other than the outcry witness to testify regarding the
complainant=s statements, and (4) admitting a videotape as an
outcry statement.  We affirm.  

I.  Background

On June 9, 2004, complainant, A.S., who was seven-years old
at the time, visited Cathy McIlveen=s home to play
with her children.  At one point, McIlveen asked A.S. if she would miss her
father when she went to visit her mother the following Saturday.  A.S. replied,
Ano.@  When McIlveen
asked A.S. why she would not miss him, A.S. said, ABecause he hurts
me.@  When asked how,
A.S. cuffed her hand around McIlveen=s ear, and spelled
out AS-E-X.@  McIlveen
instructed A.S. to not tell her anymore.  That evening, McIlveen told her
husband about A.S.=s revelation.  The next morning, they
called a police officer.  Pursuant to the officer=s instructions,
McIlveen took A.S. to the Children=s Assessment
Center in Houston.  

A.S. was interviewed on videotape by Lisa Holcomb, a
forensic interviewer at the Children=s Assessment
Center.  The videotaped interview was admitted and played during trial.  A.S.
was also examined at Hermann Hospital by Pamela Stahner, a forensic nurse. 
Stahner testified A.S. had a narrowed hymen.  Based on the physical
examination, she concluded A.S. suffered Asexual assault by
history.@    

A.S. testified that on numerous occasions since she was
four-years old, appellant caused her to participate in various forms of sexual
activities with him, including sexual intercourse, anal intercourse, and oral
sex.  In addition, Dr. Barbara Matthews, a licensed clinical psychologist who
saw A.S. weekly in psychotherapy since June 2004, testified A.S. had said her
father had AS-E-X@ with her, it hurt a lot, and she did not
want to talk about it anymore.

 

 








II.   Testimony of Michelle Haylock 

In all of his issues, appellant challenges evidentiary
rulings by the trial court.  We review a trial court=s decision to
admit or exclude evidence for abuse of discretion.  Goff v. State, 931
S.W.2d 537, 553 (Tex. Crim. App. 1996).  We will not disturb the trial court=s ruling unless it
falls outside the Azone of reasonable disagreement.@  Montgomery v.
State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991).  

First, appellant asserts the trial court erred by excluding
testimony from witness Michelle Haylock, regarding A.S.=s reputation for
truthfulness.  Texas Rule of Evidence 608(a) provides:

The credibility of a witness may be attacked or supported by evidence
in the form of opinion or reputation, but subject to these limitations: 

(1) the evidence may refer only to character for truthfulness or
untruthfulness; and

(2) evidence of truthful character is admissible only after the
character of the witness for truthfulness has been attacked by opinion or
reputation evidence or otherwise.

Tex. R. Evid. 608(a) (emphasis added).   

During appellant=s direct
examination of Haylock, the following exchange occurred: 

Q:  Do you have an opinion regarding [A.S.=s] reputation for telling the truth? 

A:  Yes, I do. 

Q:  Is that opinion good or bad?

A:  Bad. 

Q:  Is it such that she should be believed
under oath?  

[THE STATE]: I=m going to object. 

THE COURT: That=s sustained.  Disregard that.  That=s not a proper question, sir.  Do
not ask it again.    








Appellant contends the last question was proper because the
witness had already testified relative to A.S.=s general
reputation for truthfulness and it was proper to ask another question regarding
reputation.  In contrast, the State suggests the third question implicitly
required the witness to opine whether the complainant lied under oath.  We
disagree.  The answer to the first question established that the witness had an
opinion regarding the complainant=s reputation for
telling the truth.  The answer to the second question established that the
witness believed the complainant=s reputation was Abad.@  The third
question was posited, Ais it such that she should be believed
under oath?@  Appellant=s counsel employed
the definite article, Ait.@  Accordingly, we
conclude he was referring to complainant=s reputation. 

A.      Case law
prior to the promulgation of Texas Rule of Evidence 608(a) 

In support of his argument that the last question was
proper, appellant cites two Court of Criminal Appeals cases decided before the
Texas Rules of Evidence were promulgated. In both cases, the court considered
questions regarding whether a witness was worthy of belief under oath.

First, in Parasco v. State, a witness was asked if
he knew the general reputation of two witnesses for truth and whether it was
good or bad.  168 Tex. Crim. 89, 323 S.W.2d 257, 258 (1959), overruled on
other grounds by Carey v. State, 537 S.W.2d 757, 758 (Tex. Crim. App.
1976).  The witness was then asked, A>In your opinion is
the testimony of either one of them under oath worthy of belief?=@ Id.  Applying
common law evidence, the court held that this second question was improper
because A>a party is not
entitled to ask if such impeached witness is worthy of belief, as this form of
question calls for the private opinion of the witness.=@ Id. at 259
(quoting 1 Branch=s Ann. P.C. (2d ed.), p. 234, sec. 206)
(emphasis in original).   However, the court recognized, A>[a]fter a witness
testifies that the general reputation of another witness is bad for truth, he
may be asked if that general reputation is such as to entitle him to belief on
oath.=@  Id. 

Subsequently, in Sanne v. State, the court addressed
the following exchange:

Q: Sergeant Sanchez, would you tell the jury whether you know the
general reputation for truth and veracity, in the community where he is best
known, of Mr. Charles Victor Sanne?








A: Yes, sir.

Q: Is that reputation good or is it bad? 

A: Bad.  

Q: Is that reputation such as would entitle Mr. Sanne to be believed
under oath?

Sanne v. State, 609 S.W.2d 762, 772 (Tex. Crim.
App. 1980).  Citing Parasco, the court

noted
that the form of the last question was correct.  Id. at 772 n.5. 
Appellant contends and we agree that the last question in Sanne is
semantically the same form as the last question in this case. 

Both of these decisions were issued before promulgation of
the Texas Rules of Evidence.  Since promulgation of the rules of evidence, the
Court of Criminal Appeals has not addressed whether the rules affect these
particular holdings.[1] 

At common law a character witness=s testimony should
concern the Apertinent character traitBtruthfulness@ and could not Aadvert to other
characteristics of the fact witness.@  Steven Goode,
Olin Guy Wellborn, III & M. Michael Sharlot, Guide to the Texas Rules of
Evidence, at 718B19 (1 Texas Practice, 3d ed. 2002). 
Goode, Wellborn, and Sharlot further explain the relationship between common
law evidence and Rule 608 as follows:  








Rule 608(a) breaks with common-law tradition, however, by permitting a
character witness to relate her opinion regarding the fact witness=s character for truthfulness. 
While superficially a dramatic change, it has not had a significant impact in
practice.  Two factors, explain this.  First, as numerous commentators noted,
reputation testimony often was little more than a badly-disguised form of
opinion testimony.  Second, to a limited extent pre-Rules Texas courts had
blurred the reputation/opinion distinction by permitting character witnesses,
after testifying that the fact witness=s reputation for veracity was bad, to respond to questions
such as AIn view of such reputation, is he
worthy of belief?@  Regardless of whether a character
witness testifies as a reputation or opinion witness, she may testify only
about the fact witness=s character.  Rule 608 does not
authorize a witness to testify that another witness is telling the truth or
lying.[2]    

Steven
Goode, Olin Guy Wellborn, III & M. Michael Sharlot, Guide to the Texas
Rules of Evidence, at 719 (1 Texas Practice, 3d ed. 2002) (emphasis
added).  Goode, Wellborn, and Sharlot cite to Parasco and Sanne
as examples of cases in which Apre-Rule Texas courts had blurred the
reputation/opinion distinction@ under common law evidence.  Id. at
719 n.7.  

In a treatise on the Texas Rules of Evidence, Judge
Cathy Cochran has also explained[COMMENT1] [COMMENT2] [COMMENT3] 

[L]ike the analogous federal rule, Rule 608(a) allows the
character of a witness to be impeached or supported with opinion as well as
reputation testimony.  The rule expands prior Texas law, which confined
character impeachment to reputation testimony.  This expansion is merited
because witnesses who testify about the general reputation of another witness
for veracity are actually expressing their personal opinions of the witness,
and the jury takes it as such.  Witnesses may now be asked to state their
opinion of the fact witness=s character for truthfulness, and the witness may answer: AIn my opinion X is a liar,@ or AIn my opinion X is a truthful person.@  

Cathy
Cochran, Texas Rules of Evidence Handbook at 595 (5th
ed.  2003) 

(emphasis added).

Because pre-Rule courts blurred the common law distinction
between opinion and reputation and Rule 608 now allows witnesses to state
opinion as well as reputation testimony, it appears the holdings in Parasco
and Sanne are not affected by promulgation of Rule 608. We believe the
question, AIs it such that she should be believed under
oath?@ is a further
question as to reputation based on the witness=s opinion, which
is allowed under Rule 608.  Accordingly, we hold the question was proper and
the trial court erred by not allowing the witness to answer.  








B.      Harm
Analysis      

Pursuant to Texas Rule of Appellate Procedure 44.2(b),
errors in criminal cases which do not affect substantial rights are to be
disregarded.  Tex. R. App. P. 44.2(b). 
AA substantial
right is affected when the error had a substantial and injurious effect or
influence in determining the jury=s verdict.@  King v. State,
953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing Kotteakos v. United
States, 328 U.S. 750, 776 (1946)).  A criminal conviction should not be
overturned for non-constitutional error if the appellate court, after examining
the record as a whole, has found assurance that the error did not influence the
jury, or had but a slight effect.  Morales v. State, 32 S.W.3d 862, 867
(Tex. Crim. App. 2000) (citing Johnson v. State, 967 S.W.2d 410, 417
(Tex. Crim. App. 1998)).  When the claimed error is exclusion of a relevant
piece of evidence, conducting a meaningful harm analysis requires consideration
of all evidence which was admitted at trial. Id.   The fact that a piece
of evidence was wrongfully excluded from the jury=s consideration is
not sufficient to warrant reversal of a conviction unless the exclusion had a
substantial and injurious effect or influence in determining the jury=s verdict.  Id. 
(citing King, 953 S.W.2d at 271).  

We have reviewed the entire record and conclude that the
jury was not adversely affected by the trial court=s exclusion of
Haylock=s answer to the
question whether A.S. should be believed under oath. Haylock had already
testified that A.S. had a bad reputation.  Appellant contends the error was
harmful because the answer was necessary to demonstrate the degree of
A.S.=s bad reputation
for truthfulness.  However, Haylock was not the only witness who testified A.S.
had a bad reputation for truthfulness.  Prior to Haylock=s testimony, two
school nurses, Kathy LaBrode and Kathy Jenkins, both testified that A.S. had a
bad reputation for truthfulness.  








In addition, we find significant evidence from which the
jury could have concluded the incident occurred as described by A.S.,
notwithstanding the unanswered question.  First, Cathy McIlveen testified that
A.S. said her father had AS-E-X@ with her.  Pamela
Stahner, the forensic nurse who examined A.S., testified A.S. suffered a
history of sexual assault based on her physical examination of A.S., indicating
a narrowed hyman.  Lisa Holcomb, the forensic interviewer at the Children=s Assessment
Center, testified that A.S. was Avery detailed@ during the
interview in both her verbal statements and non-verbal actions. At trial,
Holcomb recited specific examples of detailed statements and actions by A.S.
regarding the sexual assault.  The jury also viewed the videotaped interview
conducted by Holcomb.  Accordingly, we find the error to be harmless because
trial court=s exclusion of the testimony did not have a
substantial and injurious effect or influence in determining the jury=s verdict.  

III.  Testimony of Clinical Psychologist as
Lay Witness 

Appellant contends the trial court erred by allowing Dr.
Barbara Matthews to testify as a lay witness after appellant=s counsel objected
to her testimony because she was not listed as an expert.  Appellant argues
that Dr. Matthews testified in an Aexpert manner@ causing the jury
to give her testimony inappropriate weight.  We disagree.   

A.      Dr. 
Barbara Matthews=s testimony 

The State called Dr. Barbara Matthews.  She testified
without objection that she was a licensed clinical psychologist and had
experience counseling people who had been traumatized.  She further testified
she had been seeing A.S. in psychotherapy weekly since June 2004, described
what types of therapy she used with A.S. in the sessions, and stated A.S. had said
that her father had AS-E-X@ with her, it hurt
a lot, and she did not want to talk about it anymore.  

Appellant then asked whether Dr. Matthews was offered as an
expert and took her on  voir dire to inquire about her qualifications.  After
the jury was retired, appellant said Dr. Matthews was a Atotal surprise@ because she was
not listed as an expert on appellant=s expert list. The
State said Dr. Matthews had been on the State=s subpoena list
since April.  The trial judge ruled, based on the Anotice issue,@ that Dr. Matthews
could testify as a lay witness.   








Dr. Matthews then testified that A.S. had been referred by
Victim Services in Big Spring, Texas and she had seen A.S. fifty to sixty times
since June 2004.  The State asked, ACan you think of a
reason, just as a regular person, why a child in an abusive relationship . . .
whether it be sexual or physical, might not tell about it right away?@  After an
objection from appellant, the trial court asked the State to lay a foundation
for Dr. Matthews to answer the question on a non-expert basis.  Dr. Matthews
testified regarding her experience with children outside of work and explained
that they tend not to come forward right away and talk about bad things that
happened.  Afterwards, the trial court ruled that Dr. Matthews could answer
based on her work experience.  Dr. Matthews then testified: AChildren don=t talk about
things that trouble them unless they feel safe.  And usually they=re scared to death
of talking about something that might get the person who=s hurting them in
trouble because they=re attached to that person. . . .
Especially if it is a caregiver.@  Based on this
testimony, appellant contends the jury gave Dr. Matthews=s testimony more
weight than a lay witness because she had been presented as a person with
specialized training as a doctor and therapist.

Pursuant to Texas Rule of Evidence 701, a lay witness may
testify in the form of opinions or inferences if they are (a) rationally based
on the perception of the witness and (b) helpful to a clear understanding of
the witness=s testimony or the determination of a fact in issue. See
Tex. R. Evid. 701.  Pursuant
to Texas Rule of Evidence 702, an expert witness may testify in the form of an
opinion if Ascientific, technical, or other specialized knowledge
will assist the trier of fact to understand the evidence or determine a fact
issue@ and the witness
is qualified as an expert by Aknowledge, skill, experience, training, or
education.@ Tex. R. Evid. 702. 









An expert witness may qualify to give opinion testimony
under both Texas Rule of Evidence 702, governing expert testimony, and Texas
Rule of Evidence 701, permitting non-expert or lay opinion testimony. Osbourn
v. State, 92 S.W.3d 531, 536 (Tex. Crim. App. 2002). When a witness who is
qualified as an expert testifies regarding events which he or she personally
perceived, the evidence may be admissible as both Rule 701 opinion testimony
and Rule 702 expert testimony.  Id.  A person with specialized knowledge
may testify about his or her own observations under Rule 701 and may also
testify about the theories, facts, and data used in his or her area of
expertise under Rule 702.  Id. (holding police officer=s testimony as a
lay witness that he smelled marijuana was admissible); see also Harnett v.
State, 38 S.W.3d 650, 659 (Tex. App.CAustin 2000, pet.
ref=d).  

However, not all observations by witnesses with experience
and training can be admitted as lay opinion testimony.  See Osbourn, 92
S.W.3d at 537 (discussing Emerson v. State, 880 S.W.2d 759, 763
(Tex. Crim. App.  1994), which held officer=s opinion based on
observations while administering the horizontal gaze nystagmus (HGN) test, a
test based on a scientific theory, could only be admissible as expert testimony
under Rule 702).  Generally, Aobservations which do not require
significant expertise to interpret and which are not based on a scientific
theory can be admitted as lay opinions if the requirements of Rule 701 are
met.  This is true even when the witness has experience and training.@  Osbourn,
92 S.W.3d at 537 (emphasis added).  Moreover, a lay witness with sufficient
personal experience and knowledge may be qualified to express an opinion on a
matter outside the realm of common knowledge with respect to events not
normally encountered by most people in everyday life.  Id.  AIt is only when
the fact-finder may not fully understand the evidence or be able to determine
the fact in issue without the assistance of someone with specialized knowledge
that a witness must be qualified as an expert.@  Id.








In addition, the requirement in Rule 701that the opinion or
inference of a lay witness be Arationally based on the perception of the
witness@ has two
elements.  Harnett, 38 S.W.3d at 657,658 (citing 2A Steven Goode, Olin
Guy Wellborn, III & M. Michael Sharlot, Courtroom Handbook on Texas
Evidence, ch. 5, art. VII, at 413 (Texas Practice 2000)).  The first
element is personal knowledge gained by perception of fact by the senses of the
witness, including what was seen, heard, smelled, tasted, touched, or felt.  Id.
at 658 (citing Bigby v. State, 892 S.W.2d 864, 889 (Tex. Crim. App. 
1994)).  The second element is the opinion must be one that a reasonable person
could draw from underlying facts.  Id.  (citing Fairow v. State,
943 S.W.2d 895, 900 (Tex. Crim. App. 1997)). 

Appellant complains of Dr. Matthews=s testimony
stating, AChildren don=t talk about
things that trouble them unless they feel safe.  And usually they=re scared to death
of talking about something that might get the person who=s hurting them in
trouble because they=re attached to that person. . . .
Especially if it=s a caregiver.@  We find Dr.
Matthews=s testimony to be
that of a lay witness because it satisfies the requirements of Rule 701.  First,
Dr. Matthews=s opinion was rationally based on her perceptions. 
Dr. Matthews testified she had experience both with children whom she was
treating in her practice and children outside the context of her practice, giving
her personal knowledge gained by her own observation and interaction with
children. Further, a reasonable person could have such opinions by spending a
significant amount of time around children. Second, her opinion was not based
on a scientific theory; but it was helpful to the jury and did not require
significant expertise to interpret.  See Osbourn, 92 S.W.3d at 537. 
Therefore, the trial court did not abuse its discretion by admitting Dr.
Matthews=s testimony as lay
testimony.  

B.      Jury
Instructions

Appellant also asserts the trial court erred by not giving
the jury a limiting instruction as to Dr. Matthews=s testimony.
Specifically, appellant argues the trial court should have instructed the jury
that Dr. Matthews=s opinions were not offered and should not
be considered as expert opinions.  Appellant does not specify when the trial
court should have given the limiting instruction.  Because he cites to portions
of  Dr. Matthews=s testimony and to proceedings prior to
the time the charge was read to the jury, we assume he means the instruction
should have been given when Dr. Matthews testified and  recited when the charge
was given to the jury.  








A party opposing evidence has the burden of requesting the
limiting instruction at the introduction of the evidence.  Hammock v. State,
46 S.W.3d 889, 892 (Tex. Crim. App. 2001) (citing Garcia v. State, 887
S.W.2d 862, 878 (Tex. Crim. App. 1994)).  Once evidence is received without a
limiting instruction, it becomes part of the general evidence and may be used
for all purposes.  Id.  To be effective, a limiting instruction must be
given when the evidence is admitted.  Id. at 894 (citing Rankin v.
State, 974 S.W.2d 707, 713 (Tex. Crim. App. 1998) (op. on reh=g)).  A limiting
instruction cannot be given for the first time at submission of the jury
charge, because it would allow the jury to Aconsider the
evidence in an inappropriate manner during the trial.@  Id. at
893.  Therefore, limiting instructions should be given to the jury twice: once
when the evidence is admitted and again in the jury charge.  Id. at 895
(citing Rankin, 974 S.W.2d at 712 n.3)).  

The record reflects at the time of Dr. Matthews=s testimony, appellant
never requested a limiting instruction as to Dr. Matthews=s testimony. 
During Dr. Matthews=s testimony, appellant objected that she
had not been listed as an expert.  Appellant further objected to Dr. Matthews
testifying in any capacity.  At the conclusion of the direct examination
appellant=s counsel said: AAt this time I=m going to ask
that the Court instruct the jury that they should disregard any testimony from
Dr. Barbara Matthews.@  We find appellant=s request that the
trial court instruct the jury to disregard any testimony is not the same as
asking for a limiting instruction.  Because appellant did not timely ask for a
limiting instruction, the trial court was not required to include a limiting
instruction in the jury charge.[3]  We hold the
trial court did not err by refusing to give the jury a limiting instruction
relative to Dr. Matthews=s testimony.

Accordingly, we overrule appellant=s second issue. 








IV.  Admission Of Videotaped Interview

We next address appellant=s fourth issue. 
Appellant contends the trial court erred by admitting the videotaped interview
of A.S. by Lisa Holcomb because (1) it did not qualify as an outcry statement;
(2)  the trial court never reviewed the videotaped interview which was  necessary
for a reliability finding; and (3) the videotaped interview contained evidence
of inadmissible extraneous offenses.       

Hearsay evidence is not admissible except as provided by
statute or the rules of evidence.  See Tex.
R. Evid. 802.  Article 38.072 provides a statutory exception to the
hearsay rule, allowing statements from a child victim twelve years of age or
younger, describing the offense to the first person eighteen years of age or
older, other than the defendant, to whom the victim made a statement about the
offense. See Tex. Code Crim.
Proc. Ann. Art. 38.072, '' 1B2(a) (Vernon
2005).  Article 38.072 also requires: (1) the party intending to offer the
statement must give notice at least fourteen days before trial of its intent to
offer the testimony, providing the name of the outcry witness and a written
summary of the statement; (2) the trial court must determine in a hearing
outside the presence of the jury that the statement is reliable; and (3) the
child must testify or be available to testify.  See  Tex. Code Crim. Proc. Ann. Art. 38.072,
' 2(b) (Vernon
2005). 








Appellant argues the trial court erred by admitting the
videotaped interview because under Article 38.072 an outcry statement must be
relayed through testimony of a live witnessCnot a videotape. 
Appellant cites Dunn v. State to support his argument. 125 S.W.3d 610,
613B14 (Tex. App.CTexarkana 2003, no
pet.). In Dunn, the State informed the trial court that it intended to
present to the jury videotaped interviews of the child victims by a social
worker as an outcry statement under Article 38.072.  Id. at 613.  At
trial, when the videotaped interviews were played, the defendant objected on
the grounds of hearsay, reliability, and the confrontation clause.  Id.  The
court of appeals held the videotaped interviews were not admissible as outcry
statements because Article 38.072 clearly contemplates that a person subject to
cross-examination will testify about the complainant=s statements.  Id.
at 614.  

However, in this case appellant failed to preserve error on
this similar complaint.  Before trial, in its Article 38.072 notice, the State
explained that it planned to offer A.S.=s outcry
statements through witnesses, Cathy McIlveen and Lisa Holcomb.  During trial,
appellant requested an Article 38.072 hearing to determine whether McIlveen or
Holcomb was the outcry witness.  At the hearing, appellant objected on the
ground that the State=s notice of intent to use A.S.=s hearsay
statement was Adeficient@ because it
specified two outcry witnesses, instead of only oneCthe first adult
person with whom A.S. spoke.  The Holcomb videotaped interview was never
mentioned during the hearing.  After listening to some of McIlveen=s testimony
outside the presence of the jury, the trial court concluded Holcomb was the
outcry witness.  However, the State never called Holcomb to testify.         

Instead, during trial, the State introduced the actual
videotape of Holcomb interviewing A.S.  At that point, appellant did not
object.  Appellant had filed a pre-trial motion to determine admissibility of
the videotaped interview pursuant to Article 38.071 and objected on grounds of
state and federal confrontation clauses.  See Tex. Code
Crim. Proc. Ann. Art.
38.071 (Vernon 2005) (permitting video testimony of child victim in a hearing
or proceeding in which court determines the child victim would be unable to
testify in the presence of the defendant).   However, appellant never obtained a
ruling on the pre-trial motion.  See Tex.
R. App. P. 33.1(a)(2)(A) (providing party must obtain a ruling on a
pre-trial motion to preserve error for purposes of appeal).  Further, appellant=s objections at
the Article 38.072 hearing concerned Holcomb as a witness, not the
videotaped interview.  The videotaped interview was never mentioned during the
hearing.  Therefore, appellant=s objection under Article 38.072 to
Holcomb as an outcry witness did not preserve error on his complaint that a
videotaped interview is not admissible as an outcry statement. See Sorto v.
State, 173 S.W.3d 469, 476 (Tex. Crim. App. 2005) (finding defendant=s objection at trial which did not
comport with the issue raised on appeal, failed to preserve his complaint for
appellate review). 








Furthermore, appellant argues that the trial court erred by
not viewing the videotaped interview to determine its reliability under Article
38.072, section 2(b)(2).  However, as we have discussed, appellant waived any
complaints regarding admission of the videotaped interview by failing to
object.  Nonetheless, as appellant has correctly argued, Article 38.072 does
not apply to admission of a child victim=s videotaped
interview because it applies to the testimony of a live outcry witness.  See
Dunn,  125 S.W.3d at 614.  Therefore, the trial court was not required to
conduct a reliability hearing pursuant to Article 38.072 with respect to
admission of the videotaped interview.[4]

Appellant also argues the trial court erred by admitting
the videotaped interview in its entirety because it contained statements
regarding extraneous offenses. Appellant contends he objected to admission of
the extraneous offenses in the videotaped interview.  However, the record
reflects appellant objected to A.S.=s testimony
regarding other sexual acts allegedly  committed by appellant in addition to
the charged offense.  The trial court overruled his objection.  Appellant did
not object to the videotaped interview much less to the extraneous offenses
described in the interview.  Therefore,  appellant waived his complaint. 

Accordingly, we overrule appellant=s fourth issue.  

V.  Cathy McIlveen=s Testimony  

In his third issue, appellant contends the trial court
erred by allowing McIlveen to testify regarding A.S.=s statements
despite finding she was not the outcry witness.  Appellant contends McIlveen=s testimony
regarding A.S.=s  statements was hearsay.  The State argues McIlveen=s testimony about
A.S.=s statements was
not hearsay because it was not offered to prove the truth of the matter
asserted.  We agree.  








McIlveen=s testimony regarding A.S.=s statements was
not offered to prove the truth of the matter asserted.  Instead, it was offered
to show the circumstances under which McIlveen called the police.  See Cano
v. State, 3 S.W.3d 99, 110 (Tex. App.CCorpus Christi
1999, pet. ref=d) (holding police officer=s  testimony that
he received information regarding use of appellant=s residence for
drug transactions prior to the arranged buy, was not offered to prove drugs
were actually being dealt from the residence at that time, but rather was
offered to show why the investigation had focused on the appellants). 
Accordingly, the trial court did not abuse its discretion by admitting McIlveen=s testimony
regarding A.S.=s statement.  We overrule appellant=s third issue.  

Accordingly, the judgment of the trial court is affirmed.  

 

 

/s/      Charles W. Seymore

Justice

 

Judgment rendered
and Opinion filed April 12, 2007.

Panel consists of
Chief Justice Hedges and Justices Yates and Seymore.

Publish C Tex. R. App. P. 47.2(b).

 









[1]  Effective September 1, 1983, the Texas Supreme Court promulgated the
Texas Rules of Civil Evidence.  Effective March 1, 1998, the Texas Supreme
Court and the Court of Criminal Appeals jointly promulgated the uniform Rules
of Evidence to govern both civil and criminal cases. 

 





[2]  We note that Weinstein=s Federal Evidence treatise made a similar observation
as to Federal Rule of Evidence 608: AThe lifting of the ban on opinion evidence has had only a
minimal effect on lay testimony.  Most courts had rather illogically, but
pragmatically, allowed a reputation witness to be asked whether based upon his
or her knowledge of the reputation of the principal witness, he or she would
believe the principal witness under oath, even though such a question obviously
called for a conclusion by the reputation witness.  A witness may now be asked
directly to state his or her opinion of the principal witness=s character for truthfulness and
may answer, for example, >I think X is a liar.=@   4 Jack B. Weinstein &
Margaret A. Berg, Weinstein=s Federal Evidence, ' 608.13[2] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 1997).





[3]  We note prior to recitation of the jury charge,
appellant informed the trial court that he wanted to submit an Ainstruction@
pertaining to Dr. Matthews=s testimony. 
The trial judge told appellant he could submit the Ainstruction@
after lunch.  After the recess, the trial judge said, ALet the record reflect I included an admonishment in
the jury charge regarding expert witnesses.@ 
There was no objection by appellant after the trial court=s statement.  The clerk=s record does not include a written request for an instruction from
appellant. Therefore, it is not clear whether the Aexpert witness@ instruction
was what appellant submitted to the court.  The instruction in the jury charge
as to expert witnesses was only a general instruction to the jury on expert
witness testimony.  Nevertheless, because appellant failed to request a
limiting instruction at the time of Dr. Matthews=s testimony, the trial court did not err by refusing to give a limiting
instruction relative to Dr. Matthews=s
testimony.    





[4]  We also note that the record is not clear whether
the court considered the reliability of Holcomb=s testimony when deciding she was the outcry witness.  However, any
complaint regarding whether or not the trial court considered the reliability
of Holcomb=s testimony would be moot because Holcomb never
testified as the outcry witness. Although Holcomb was later called as a witness
by the defense, she only testified regarding her interview methods and not
about A.S.=s specific statements as to the sexual offenses. 













 [COMMENT1]Technically
I think they are called Judges, not Justices









 [COMMENT2]Delete
bold









 [COMMENT3]